The CITY OF TEMPLE, Appellant,

v.

Billie Edd WILSON, Appellee.

No. 11048.

Court of Civil Appeals of Texas.

Austin.

Feb. 20, 1963.

Rehearing Denied March 13, 1963.

Joe Carroll, Temple, for appellant.

Lee Curtis, Belton, for appellee.

HUGHES, Justice.

This is a suit for damages resulting from a collision between a City of Temple owned and operated truck and a pick-up truck and trailer owned and operated by Billie Edd Wilson. The collision occurred about 2 p. m. August 31, 1960, approximately three miles east of the County Courthouse in Belton on Farm Road No. 1741 where it makes a T intersection with a graveled road which runs south to the Belton Sand and Gravel Company headquarters.

The day was clear. The City truck was traveling west on Road 1741. Appellee was traveling east on this road. The driver of the City truck, Mr. Willie Whitley, desiring to make a left turn and enter the graveled road running south made his turn, without giving any signal, and appellee, although applying his brakes, was unable to stop his pick-up before colliding with the City's 31′ truck, at a point about six feet from the end. The point of impact was in appellee's half of the road.

■ Trial was to the Court without a jury. Judgment for damages for appellee was rendered. No findings of fact nor conclusions of law were requested or filed. We, therefore, make all factual statements in a manner most favorable to appellee and in support of the judgment, when authorized by the evidence.

■ The City charter of the City of Temple provides that notice in writing must be given the City of any claim for damages for personal injuries or destruction of property within sixty days after such damage has been sustained which notice shall, among other matters, state "when" the damage or injury occurred.

The timely notice given to the City by appellee is attacked by the City on the ground that the date of the collision is given as "August 30, 1960," when the true and correct date was August 31, 1960.

This error is made the subject of appellant's eighteenth point.

We regard this criticism of this notice under the circumstances of this case to be hypercritical and without substance. The damages and injuries were caused by a City employee when using a City truck. Other City employees were at the scene of the accident on the date of its occurrence and assisted in caring for the City truck.

The charter provision under consideration does not require letter perfect compliance. It does require reasonably substantial good faith compliance. Appellee has, in our opinion, met this test.

Appellant has twenty-four points other than the one above discussed. Points five to ten, inclusive and points twenty-two and twenty-three, briefed jointly, relate the absence or insufficiency of the evidence to support an implied finding that W. L. Whitley was an employee of the City and acting within the scope of his employment at the time of the collision.

Mr. John Roark, director of public works for the City at the time in question, testi-

fied that it was the obligation of the City to haul the asphalt from the plant ten miles from the City to a street job in Belton.

Mr. Whitley testified, in part, as follows:

"Q. Were you working for the Street Department in August of 1960?

"A. Yes, sir.

"Q. At the time of the wreck? A. Yes, sir.

"Q. Have you always worked in that department?

"A. Yes, sir.

"Q. Now, let us talk a bit about August 31, 1960, the day of the collision. On that day who was your immediate superior or who was the man that was next in line—I don't guess the mayor told you what to do, did he?

"A. No, sir.

"Q. Who was the first man over you in the Street Department?

"A. Ed Candler.

"Q. Ed Candler? A. Yes, sir.

"Q. What was his title? A. Street Superintendent.

"Q. Is he still Street Superintendent?

"A. Yes, sir.

"Q. And who was over Mr. Candler? A. John Roark.

"Q. He is the City Engineer?

"A. Well, he used to be. He is the City Engineer and builder.

"Q. And was that Mr. Roark's title back in 1960?

"A. Yes, sir.

"Q. Which one of them ordinarily gave you instructions about what you were to do each day?

"A. Mr. Candler.

"Q. Was he the man who told you what to do on August 31, the day this wreck happened?

"A. Yes, sir.

"Q. What did he tell you to do, Bill?

"A. Well, to get No. 18, which all trucks have numbers, and to go to Mr. Bert Camp's and to haul asphalt back to Avenue M to the laydown machine.

"Q. Was Avenue M being paved with asphalt?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. You work for the City of Temple, you drive trucks and heavy equipment?

"A. Yes.

"Q. And you did on August 31, 1960?

"A. Yes.

"Q. You were driving the city vehicle that was involved in a collision with a pickup and welder in which Billie Edd Wilson was driving?

"A. Yes.

"Q. And did that occur at the intersection of that farm to market road at the Belton Sand and Gravel Company in Bell County?

"A. Yes."

There is no evidence contrary to the above evidence on these issues. We find it not only sufficient to support the judgment as to the liability of the City for negligence of Mr. Whitley at the time of the collision, but conclusive in this respect.

By points one, two, three and four appellant contends that there is no evidence or insufficient evidence that appellee had and kept his vehicle under control at and immediately prior to the collision, and in failing to stop before the collision.

Appellee's pick-up was pulling a trailer with a welder on it. The trailer had no

brakes. The pick-up had brakes in good condition. When appellee saw the City truck suddenly and without giving any signal commence a left turn into the side road he was traveling about thirty-five miles an hour and was about 60 steps or 180 feet from the City truck. The brakes held but the wheels failed to maintain traction and the pick-up skidded into the City truck. This sliding is accounted for by the presence of loose gravel on the asphalt farm road, a fact unknown to appellee.

■ Appellant cites Renner et al. v. National Biscuit Company, 173 S.W.2d 332, writ ref. w. o. m., Tex.Civ.Galv., for the rule there stated that having a motor vehicle under control means "* * * that the operator, by the means at his command and by the use of ordinary care, could so lessen the speed of his automobile or even stop it if necessary, as to avoid the danger of a collision without injury to any person or thing he could have reasonably anticipated as probably being on his right-hand half of the highway, or near enough thereto to be struck by any part of his automobile."

■ The key words in the above quotation, applicable here, are "reasonably anticipated." We cannot say, as a matter of law, that appellee, traveling at a moderate speed, could have reasonably anticipated that a 31' truck would suddenly and without warning swing into his path 180' from him.

We also note here that the abruptness of the turn of the City truck is made manifest by the presence of a truck, called the Grimes truck, which was standing at a stop sign waiting to enter the farm road from the side road into which the City truck was turning. The City truck could not "angle" into this road. A hard left turn was necessary in order to avoid striking the Grimes truck.

We believe the question of proper control of appellee's car was for the fact trier, and we overrule the points under consideration.

Point eleven is that the evidence having probative force establishes that appellee was driving at an excessive rate of speed at the time of the collision. Appellant points to evidence of the force of the impact as bearing on the speed of the pick-up. These are circumstances properly considered on the issue of excessive speed of an automobile, but they are not conclusive; neither is the opinion of Mr. Whitley that appellee's car was approaching at sixty miles per hour. Appellee testified that he was driving about 35 miles per hour. If Mr. Whitley's estimate of speed is correct, then, it seems to us, his act in turning his truck into the path of the approaching car tends to aggravate his recklessness.

In our opinion, this issue was for the trier of the facts.

Points twelve and thirteen are that there is no evidence or insufficient evidence to sustain an implied finding that Whitley, driver of the City truck, failed to keep a proper lookout for other vehicles just prior to the collision, as alleged. The basis for this contention is the testimony of Mr. Whitley that he did not see the approaching Wilson pick-up until he had commenced his turn into the side road. The reason for this failure is explained by Mr. Whitney as follows:

"Q. Can you tell us why you didn't see him before you started making the turn?

"A. Well, there is a low spot down in the road where you can hide a car and you can come around the corner and there is a no passing zone both ways.

"Q. Are there signs out there that say no passing?

"A. No.

"Q. Were there any signs that said no passing when this wreck happened?

"A. No, sir.

"Q. Were you aware of that spot where you say you couldn't see a vehicle when this wreck happened?

"A. No, sir.

"Q. You did not know about it at that time?

"A. No, sir

"Q. Who called it to your attention that there was such a spot there?

"A. Mr. Carroll.

"Q. Have you been out there in the cab of the same truck or a similar truck to the one you were driving on that day, and driven that last hundred yards from east of the intersection, have you driven that last 100 yards down to it to see if you can see a vehicle coming up from the west?

"A. Yes, sir..

"Q. And you couldn't see the vehicle? .

"A. No, sir."

In opposition to this testimony, appellee testified that he saw the City truck when he was more than 180′ west of the intersection and the Whitley truck was approximately 375′ east of the intersection or side road, a total distance of about 185 yards.

On cross examination Mr. Whitley testified that sitting in his truck at the intersection and looking west, the direction from which appellee's car came, he could see the pavement for 600 yards and that there was "complete visibility to the west."

In addition, tests were made by Mr. Emmett West and Mr. Mack Birtchet from points 50′, 100′, 200′, and 250′ east of the intersection at the eye level of a person sitting in the City truck. At 50′ all the approaching cars from the west, about one half mile distant, could be completely seen; at 100′ they were visible from the bumper up; at 200′ from the hood up; at 250′ from about half the windshield up.

■ We believe. that, at most, the question of a proper lookout was one of fact. We also believe that the implied finding of the Trial Court was not against the weight of the evidence. We, accordingly, overrule the points under discussion.

■ Points fourteen and fifteen are that there was no evidence or insufficient evidence to sustain an implied finding that Mr. Whitley failed to give a proper signal of his intention to make a left turn into the side road. Mr. Whitley testified that he signaled by use of his directional light signal. Appellee testified just as unequivocally that no signal of any kind was given. They were both interested witnesses and their testimony presented a pure fact issue. In addition, Mr. Grimes, a disinterested witness who was stopped at the stop sign on the side road, testified that he did not remember paying any attention to a signal. Also, Mr. R. L. Porter who was driving a car following appellee testified that he saw the approaching City truck and that he did not see any kind of signal given before the left turn by the City truck was attempted. These points are overruled.

■ Points sixteen and seventeen are that there is no evidence or insufficient evidence to sustain an implied finding that Whitley did not, as charged, change the direction in which the City truck was traveling without observing that such change could be safely made.

Appellant refers to the statement and argument made under its points fourteen and fifteen. Similarly, we refer to our discussion of those points. It is our opinion that the evidence fully supported the implied findings here attacked and we overrule these points. ...

Points nineteen, twenty, twenty-one, twenty-four and twenty-five, jointly briefed, are that there was no evidence or insufficient evidence to establish that Whitley was negligent or that his negligence was the proximate cause of the collision, and that all the points specifically made require judgment for appellant.

In discussing these points appellant does not refer to any evidence not previously referred to by him nor to evidence not noticed in this opinion. For this reason, we do not again recite the facts or the evidence. It is our opinion that negligence and proximate cause were fact issues for the Trial Judge, and that his implied findings in this respect are founded upon sufficient evidence of an almost compelling nature.

Having disposed of all assignments of error presented by appellant and finding no error requiring a reversal, we affirm the judgment of the Trial Court.

Affirmed.