CITY OF AUSTIN, Appellant,

v.

Anna M. SELTER, Appellee.

No. 11474.

Court of Civil Appeals of Texas.

Austin.

May 3, 1967.

Rehearing Denied May 24, 1967.

Doren R. Eskew, City Atty., Dudley Fowler, Don R. Butler, James A. Brady, Asst. City Attys., Austin, for appellant.

Byrd, Davis, Eisenberg & Clark, Tom H. Davis, Harley Clark, Jr., Austin, for appellee.

PHILLIPS, Chief Justice.

Anna M. Selter, the appellee here, brought suit against the City of Austin for negligence in the drowning death of her son Michael Selter, at Barton Springs swimming pool in Austin, Texas. Trial was to a jury and judgment was for appellee.

We affirm.

It was a bright sunny day when this tragedy occurred. Previously, heavy rains had caused the water running down Barton Creek to back up behind the upper dam at Barton Springs pool. There are four openings in this dam covered by iron bars spaced a few inches apart. Due to the high

water in the upper creek, these openings had become covered with debris such as logs, branches, wire, empty cans and rocks.

The openings are about five feet tall measuring from the creek bottom and about twenty inches wide. The iron bars covering these openings are spaced about six inches apart. It is about three feet from the dam's top to the top of the openings. The dam is about 140 feet long and is approximately five feet wide with a walk across the top.

On the day of the drowning, water was coming over the top of the dam and the water behind the dam extended up the creek about 100 yards. The water in this pool behind the dam was clear, the surface was relatively calm and the water did not look rapid. If one stood on the dam and looked at the openings on the up-creek side, no foam was visible as the water passed through the gates into the pool-proper beyond. According to the manager of the swimming pool and the Barton area, the flooded area behind the dam was an attractive pool of water. Motion picture films taken at the scene of the tragedy by a local television photographer were shown to the jury, thus graphically illustrating this attractive and apparently calm body of water.

On this day, Jeffrey McDonald was a lifeguard on duty at the pool. He had been a guard there for four years and his older brothers had guarded there before him. He was 21 years old, weighed 185 pounds and stood five feet eight and one half inches tall. He had been attending college.

The manager of the pool and Zilker Park in general, McDonald's superior, was Jack Robinson. Robinson had spent most of his life on the pool premises. He first started working at the pool in 1946 as a locker boy and later as a cashier, lifeguard, then manager. He had a degree from the University of Texas and had served in the Navy as an officer.

Fred Hanna, another lifeguard on duty when this incident occurred, went to the dam first and cleared two of the openings of debris. When he had finished he went to where McDonald was guarding the pool and they traded places, that is, McDonald went to clear the last two openings and Hanna ascended the guard tower. At this time Hanna mentioned the suction caused by the water flowing through the openings of the dam and warned McDonald of this suction.

McDonald got into the water behind the dam and completely cleaned one of the openings by himself. While cleaning this opening he once turned his back to it and was sucked toward it. At one point while he was pulling some debris off the bars, the suction almost pulled a ring off his hand. The suction was very strong and he testified that he was afraid of it.

The testimony of Robinson and McDonald, both of whom had practically grown up at Barton Springs, was that there was a right way and a wrong way to approach the dam openings when they were open and under water. The right way was to either place a leg on either side of the opening while holding one's body away from the opening or to stand to one side of the opening with the body pressed against the dam itself. In the former position both arms are free with which to remove debris, in the latter, only one arm is free to work with.

While McDonald was clearing the last opening Michael Selter, Mark Hall and James Rudolph came along the walkway on top the dam and asked him if they could help. He told them that they could by taking debris that he handed them and walking over and placing it on the bank. The boys began helping in this manner and eventually Michael Selter got into the water with McDonald.

Before Michael submerged, McDonald testified that he told him to "be careful

because of the suction." His testimony in this regard is as follows:

"Q  Did you caution him not to get in front of the gate specifically?

A  I can't remember for sure. All I can remember is I told him to watch out for the suction.

Q  Just in that manner as you told me?

A  Well, I can't remember how—I can't remember if I was very emphatic about it. I specifically remember just telling him to watch out for the suction.

Q  And was that about it?

A  That was about it, yes, sir.

Q  And you didn't go into any more detailed instructions?

A  No sir."

When these words were spoken McDonald and Michael were about two feet apart in the water. James Rudolph was not sure if they were facing each other. McDonald said that he had on an underwater face mask. Mark Hall testified that McDonald was also using a snorkel which is a plastic or rubber breathing tube. Hall further testified that the only mention he heard of the suction came while Michael was still standing on the dam 3½ to 4 yards from McDonald, who was in the water, and that he did not believe that Michael heard this because of the face mask and snorkel and the distance separating them. Additional interference with communication existed by virtue of the loud noise made from the water coming over and going through the dam.

McDonald and Michael made three to five dives together. On Michael's last dive, McDonald, wearing a face mask, was on his way to the surface right above Michael. He saw Michael carrying some kind of debris, push off from the creek bottom and start up close to the dam in front of the opening. It was then that "the suction just brought him right directly up to the gate and pinned him on it."

Repeated efforts were made to extricate Michael from the bars covering the opening all of which ended in failure until some fifteen minutes later with the aid of a pipe used as a prize, Michael's body was brought to the surface. Artificial respiration by various methods including a resuscitator by firemen, who had arrived on the scene, were futile.

At the time of his death Michael Selter was 14 years old, he had finished the eighth grade, was five feet three inches tall and weighed between 120 and 125 pounds.

McDonald had not pointed out to Michael the way to stand and brace. Michael had not been cautioned not to get in front of the opening.

It was necessary according to Robinson to use a face mask in order to see while cleaning the openings. McDonald was using one. None had been provided for Michael.

When there was high water behind the dam, it was pool policy to keep people out of this area. The rule was to station a park patrolman in the dam area to keep people away until the water receded. When Michael died, at about 11 a. m., the patrolman was not there. He was to come on duty at noon. In his absence, it was the duty of the lifeguards to watch this area and keep people from going into it. McDonald and Hanna knew this. Robinson testified that it was McDonald's duty as a lifeguard to keep people out of the water beyond the dam and stated that it was undesirable to have people in the water because it was not safe. The area was not roped off to prohibit customers from entering it. Hanna, from his perch on the tower, could see where McDonald and the boys were working and the guard's duty on this tower was to whistle and keep people out. There is no evidence in the record that Hanna attempted to discharge this duty.

When the boys first came to where McDonald was working, he did not tell them to leave the area. He explicitly gave them permission to stay and help. Although nothing prevented McDonald from doing so, he never told Michael to get out of the water. Rudolph testified that he also had been in the water submerging to gather debris and that McDonald saw him doing this. Rudolph never heard McDonald tell anyone to get out of the water or not to come into the water.

McDonald was a lifeguard when cleaning the openings. He agreed that his duties as such did not end just because he had been told to clean them.

Dr. Alderson, the appellant's leading water safety expert, testified that lifeguards should recognize dangerous conditions in the water and prevent untrained people from being near them. This is a cardinal principle of lifeguarding, according to Dr. Alderson.

The jury found that a cause of Michael's death was that he was allowed to help clean the openings without being adequately warned of the specific dangers involved. After hearing the testimony and hearing the witnesses, the jury concluded either that the warning was given in such a way that Michael did not hear it or that it was given so casually and briefly that it did not inform him of the dangers.

The jury also found that Michael was allowed to clean the openings without being given adequate instructions on the safest way to do it. Actually the record reveals that he received no instruction on how to go about protecting himself from the suction.

The jury found that appellant allowed Michael Selter to help clean the gates without adequately warning him of the specific dangers involved; that this was a proximate cause of his death; that appellant allowed Michael Selter to help clean the gates without giving him adequate instructions on the safest way to do it; that this

is a proximate cause of his death; that appellant allowed Michael Selter to help clean the gates without providing him with adequate safeguards; that this was a proximate cause of his death; that appellant failed to take reasonable precautions to keep Michael Selter away from the area above the upper dam; that this was a proximate cause of his death; that appellant allowed Michael Selter to get into the water above the upper dam when he could not do so with safety; that this was a proximate cause of his death; that appellant did not cause the gates to be cleaned at a time when they could be cleaned with safety; that Michael Selter had knowledge of the suction around the gates in the dam; that Michael Selter did not appreciate the nature and full extent of the danger of the suction around the gates in the dam; that Jeff McDonald did not give Michael Selter a warning which was adequate to enable Michael Selter to avoid being sucked into the gate of the dam; that the death of Michael Selter was not the result of an unavoidable accident; that the value of the mental anguish suffered by Michael Selter as a result of his drowning was Ten Thousand Dollars ($10,000) and that the present value of the pecuniary benefits that Anna M. Selter would have received from Michael Selter was Twenty-Eight Thousand Dollars ($28,000).

### I.

Appellant is before this Court on forty-two points of error; the first two, briefed together, are: the error of the trial court in failing to grant appellant's motion non obstante veredicto, because at the time of his death, Michael Selter was acting solely as a volunteer; the error of the trial court in refusing to submit appellant's requested Special Issue No. 9 inquiring if Michael Selter was acting as a volunteer at the time and place in question.

We overrule these points.

Michael Selter was an invitee having paid his admission to a public park. He

was at a public swimming pool prepared to swim. The fact that he entered a pool of water some few feet from the confines of the pool-proper is controlled by our decision in City of Lampasas v. Roberts, 398 S.W.2d 612, (Tex.Civ.App. Austin 1966, writ ref'd n.r.e.) where we stated that the test of whether a person is an invitee at the exact place of injury is whether the owner of the premises ought to have anticipated the presence of a member of the public at that particular point on the premises that are devoted to public use.

The fact that the city anticipated members of the public at the pool where Michael died is shown by their practice of stationing a patrolman at the pool to keep people away. In addition, the park picnic area borders the pool in question in such a manner that it is well within the general area of the park proper.

■ Appellant has cited cases to this Court seeking to classify Michael as a volunteer [1] and thus preclude recovery, however these cases are not in point. In these cases the Court either invoked the common law rule that the master is not liable to one servant for injuries due to negligence of another servant where both servants are engaged in the same common employment or enterprise; or [2] where a volunteer, without being employed by such servant assumes all of the ordinary risks of the situation so that he takes things as he finds them. Thus, in case of injury the volunteer cannot recover from the master of the servant he has assisted by reason of the relationship thus created unless the injury is such as would create a liability as to a trespasser or bare licensee.

Michael, as an invitee who had paid admission to use the pool, does not fall within this class of persons and was due a considerably higher degree of care on the part of the city: he came to the pool prepared to swim, to play as would any other fourteen year old boy under same or similar circumstances. This is exactly what he was doing when he met his death. The fact that the actual removing of the debris might have been beneficial to the city was purely incidental to his main purpose, a purpose which the city rightfully could have and did expect. The city had recognized this duty in employing the lifeguards and the guard to keep people away from the pool where Michael died.

■ Even assuming, for the purpose of argument, that Michael was a volunteer, the city cannot avoid liability on this fact alone. He would still be entitled to seek recovery on the general grounds of negligence. As was stated in Daugherty v. Spuck Iron & Foundry Co., by the St. Louis Court of Appeals, Missouri, 1943, 175 S.W.2d 45:

"In none of the authorities cited by defendant does the discussion involve an invitee injured by the negligence of a master's servant while attending to business of mutual interest and advantage to both parties, and within the scope of the invitation, as in the case at bar.

Defendant, relying upon 18 R.C.L., Sec. 84, pages 578 and 579, refers to a part thereof which we hold is not applicable to the case at bar. In the very same section of the same authority, however, will be found the rule stated which we think is directly applicable herein.

the rights of invitees upon premises of others and others deal with the liability of the owner of premises to a licensee. Those cases are not in point and cannot affect the disposition which we must make of the instant case."

1. Sandefur v. Sandefur, 232 S.W.2d 111, (Tex.Civ.App. Amarillo 1950, writ ref'd.). In this case the Court said: "In reply to appellant's motion for re-hearing, appellee has cited us to a list of twenty-one cases decided by the courts of this and other states and by the Federal Courts. We have examined all of them and in none of them do we find any holding contrary to the conclusions we have expressed. A number of them deal with

2. Marshall & E. T. Ry. Co. v. Sirman, 153 S.W. 401 (Tex.Civ.App., Texarkana 1913, writ ref'd.).

It is there said that while a volunteer may not recover on the basis of being a servant, 'he yet may be entitled to the exercise of that degree of care owed to persons rightfully on the premises of the employer and may found his right of recovery on the general principles of negligence.' "

Also see 35 American Jurisprudence, Master and Servant, Sec. 167, p. 596.

Consequently, the City's requested Issue No. 9 inquiring if Michael Selter was acting as a volunteer at the time and place in question was properly refused.

## II.

Appellant's points of error three, four and five, briefed together are as follows: The court erred in failing to grant appellant's motion for judgment non obstante veredicto because the conditions in question which Michael Selter voluntarily exposed himself to were so open and obvious that, as a matter of law, he was charged with knowledge and appreciation of the conditions and the nature and extent of any attendant danger; the court erred in refusing to submit appellant's requested Special Issues Nos. 1 through 4 which required if, in the exercise of ordinary care, Michael Selter should have known the conditions in question, if he should have appreciated the extent of the danger thereof, if he voluntarily exposed himself thereto and if such was a proximate cause of his death and the court erred in submitting its Special Issue No. 14 in terms which required Michael Selter to appreciate the full extent of the danger in question over appellant's objection that this was a greater appreciation than was required by law and in refusing to submit appellant's requested Special Issue No. 21 which was couched in proper language.

Appellant cites Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, (Tex.1963) for authority that one cannot ignore signals of danger which are patently open and obvious as those in this case and then recover as a result of his voluntary exposure thereto.

Testimony discloses that the pool in question was clear and tranquil in appearance under which circumstances Michael cannot be said to have been in possession of facts from which he would be legally charged with appreciation of the danger involved. The condition was not open and obvious but latent and hidden. In viewing the water from above the dam there was nothing to warn of the force of the suction against the gates beneath the surface.

While there was movement of water over and through the dam, the extent, degree and location of the dangerous suction, well below the surface, was not such as to constitute an open and obvious condition as a matter of law.

In order for the defense of "no duty" to apply, the injured party must have known and appreciated the full extent of the particular danger which caused his injury or death, Ellis v. Moore, 401 S.W.2d 789 (Tex.1966). Knowledge of a defect by one seeking recovery is not enough to bar recovery in a personal injury action under the doctrine of assumed risk. There must be knowledge of the danger involved and appreciation of that danger.

Should appellant have offered this series of issues as contributory negligence issues they were properly refused. The trial court need not submit a special issue unless it is supported by the pleadings and evidence and is requested in substantially correct form, Texas Rules of Civil Procedure 279.

Appellant's requested "should have known" series of issues were defective in that the first issue inquires only "Of the suction around the gates in the dam" and nowhere limits the inquiry to the real danger which caused Michael's death, namely, the extent and degree of the suction around the dam if a person's body is placed in front of and too near the gates without bracing.

Merely to know of the suction around the dam is too general and broad to meet the requirements of a proper defense.

While Michael was warned of a suction and no doubt encountered some suction on his several trips to the bottom, we hold that there is no evidence in this record from which Michael should have appreciated the full extent of the danger with which he was ultimately confronted.

We hold that the trial court's submission of its Special Issue No. 14 in terms which required Michael Selter to appreciate the full extent of the danger was correct and did not require a greater appreciation of the danger than is required by law. Ellis v. Moore, 401 S.W.2d 789 (Tex.1966). Ellis stated that the function of a warning is to give the plaintiff knowledge and opportunity to appreciate the danger. He can then decide whether to confront the danger.

Under the facts of this case, the warning given, if heard by Michael, was insufficient to apprise him of the magnitude of the danger involved.

### III.

Appellant's points six through twelve are: The court erred in refusing to grant appellant's motion for judgment non obstante veredicto because, as a matter of law, appellant discharged any duty which it may have had to Michael Selter by properly warning him of the conditions to which he voluntarily exposed himself; the court erred in submitting its Special Issue No. 1 over appellant's objections that it was evidentiary and imposed a greater duty on appellant than required by law and in refusing to submit appellant's requested Special Issue No. 19 which properly made inquiry as to the warning given to Michael Selter; the court erred in submitting its Special Issue No. 17 over appellant's objections that submission in such form was evidentiary and imposed a greater duty than was required of appellant by law; the court erred in rendering judgment on the answer of the jury to Special Issues Nos. 1 and 17, both inquiring as to the warning given to Michael Selter, because there was no evidence to support the answers of the jury thereto; the court erred in rendering judgment based on the answers of the jury to Special Issues Nos. 1 and 17, because there was insufficient evidence to support the answers thereto; the court erred in rendering judgment based on the answers of the jury to Special Issues Nos. 1 and 17, because the answers of the jury thereto were against the overwhelming weight and preponderance of the evidence and the court erred in refusing to submit appellant's requested Special Issues Nos. 19, 19a, 19b, and 19c which inquired if Michael Selter had been warned, if he failed to heed such warning, if such failure to heed was negligence and if such negligence was a proximate cause of his death.

We overrule these points.

Special Issue No. 1 is as follows:

"Do you find from a preponderance of the evidence that on the occasion made the basis of this suit, the City of Austin allowed Michael Selter to help clean the gates without adequately warning him of the specific dangers involved?

In connection with this issue you are instructed that 'adequately warning him' means such warning as would have been given by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances."

Then followed an issue on proximate cause.

Both of these issues were answered in the affirmative.

Special Issue No. 17 is as follows:

"Do you find from the preponderance of the evidence that at the time and place in question, Jeff McDonald gave Michael Selter a warning which was adequate to enable Michael Selter to avoid being sucked into the gate of the dam?"

The jury answered this issue "No."

■ Both the abovementioned issues were submitted over appellant's objections that they were evidentiary and imposed a greater duty on appellant than was required by law.

We overrule this contention and refer to our discussion above in connection with Ellis v. Moore. We hasten to add that the overwhelming evidence supports both the submission and the answers returned by the jury thereto.

■ With respect to the court's refusal to submit appellant's requested Issues 19, 19a, 19b and 19c, which inquired if Michael Selter had been warned, if he failed to heed such warning, if such failure to heed was negligence and if such negligence was a proximate cause of his death, we hold that the court was correct in its refusal.

The ultimate facts represented by these requested issues were submitted in Issues 17 through 21. Issue No. 17 inquired whether Jeff McDonald gave Michael a warning which was adequate to enable him to avoid being sucked into the gate of the dam. The jury's answer to this was "No." Following this issue was the instruction: "If you have answered the foregoing Special Issue 'yes' then you will answer the following Special Issue; otherwise you need not answer the same." Special Issue No. 18 asked if Michael had heard such warning; Issue 19 inquired whether Michael failed to heed the warning; Issue No. 20 inquired whether such failure to heed the warning was negligence followed by Issue No. 21 as to proximate cause.

The ultimate facts represented by appellant's requested Issues Nos. 19, 19a, 19b were submitted in Issues Nos. 17 through 21. These issues requested by defendant were nothing more than different shades and phases of the same ultimate issues. Miles-Sierra Co. v. Castillo, 398 S.W.2d 948, (Tex.Civ.App. San Antonio 1966, writ ref'd n. r. e.).

## IV.

Appellant's points thirteen, fifteen and sixteen, briefed together, are the error of the trial court in submitting its Special Issue No. 3 over appellant's objection that there was no duty to give Michael Selter instructions; the error of the court in rendering judgment on the answer of the jury to Special Issue No. 3 because there was no evidence of probative force to support the findings of the jury; the error of the trial court in rendering judgment on the answer of the jury to Special Issue No. 3 because the evidence was insufficient to support the findings of the jury.

We overrule these points.

■ Special Issue No. 3 was: "Do you find from a preponderance of the evidence that on the occasion made the basis of this suit, the City of Austin allowed Michael Selter to help clean the gates without giving him adequate instructions on the safest way to do it?

This finding is not necessary to uphold this judgment.

We hold that if there was any error here it was harmless error and did not cause the rendition of an improper judgment in the case. Tex.R.Civ.P. 434.

## V.

■ Appellant's points seventeen, nineteen, twenty, twenty-one, twenty-two, twenty-three and twenty-four, briefed together, are as follows: The court erred in submitting its Special Issue No. 5 over appellant's objections that there was no duty to provide Michael Selter with adequate safeguards at the time and place in question and rendering judgment based on the answer thereto; the court erred in rendering judgment based on the answer of the jury to Special Issue No. 5 for the reason that there was no evidence of probative force to support such findings of the jury; the court erred in rendering judgment based on the answer of the jury to Special Issue No.

5 because the evidence was insufficient to support the findings of the jury; the court erred in rendering judgment based on the answer of the jury to Special Issue No. 5 because the jury's finding was so contrary to the great weight and preponderance of the evidence as to be clearly wrong; the court erred in rendering judgment based on the answer of the jury to Special Issue No. 6 for the reason that there was no evidence of probative force to support such findings of the jury; the court erred in rendering judgment based on the answer of the jury to Special Issue No. 6 because the evidence was insufficient to support the findings of the jury and the court erred in rendering judgment based on the answer of the jury to Special Issue No. 6 because the jury's finding was so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Special Issue No. 5 is: Do you find from a preponderance of the evidence that on the occasion made the basis of this suit, the City of Austin allowed Michael Selter to help clean the gates without providing him adequate safeguards. Safeguards were then defined.

Special Issue No. 6 is: Do you find from a preponderance of the evidence that such conduct, if any you have found, was a proximate cause of Michael Selter's death.

This finding is not necessary to uphold this judgment.

We hold that if there was any error here it was harmless error and did not cause the rendition of an improper judgment in the case, Tex.R.Civ.P. 434.

## VI.

Appellant's points of error twenty-five, twenty-six, twenty-eight, twenty-nine, thirty, thirty-one, thirty-three, thirty-four and thirty-five, briefed together, are as follows: The court erred in submitting Special Issue No. 7 and rendering judgment based on the answer of the jury thereto over appellant's objections that there was no duty on the

part of appellant to take reasonable precautions to keep Michael Selter away from the place in question as required by such instruction; the court erred in submitting Special Issue No. 7 and rendering judgment thereon over appellants' objection that there was no pleading to support the submission of same; the court erred in rendering judgment based on the answer of the jury to Special Issue No. 7 for the reason that there was no evidence of probative force to support such findings of the jury; the court erred in rendering judgment based on the answer of the jury to Special Issue No. 7 because the evidence was insufficient to support the findings of the jury; the court erred in rendering judgment based on the answer of the jury to Special Issue No. 7 because the jury's finding was so contrary to the great weight and preponderance of the evidence as to be clearly wrong; the court erred in submitting its Special Issue No. 9 and in rendering judgment based thereon over appellant's objections that appellant had no duty to prevent Michael Selter from going into the water under the circumstances in question; the court erred in rendering judgment based on the answer of the jury to Special Issue No. 9 for the reason that there was no evidence of probative force to support the finding of the jury; the court erred in rendering judgment based on the answer of the jury to Special Issue No. 9 because the evidence was insufficient to support the finding of the jury and the court erred in rendering judgment based on the answer of the jury to Special Issue No. 9 because the jury's finding was so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

We overrule these points.

Special Issue No. 7 is as follows: Do you find from a preponderance of the evidence that on the occasion made the basis of this suit the City of Austin failed to take reasonable precautions to keep Michael Selter away from the area above the upper dam. Then followed a definition of "reasonable precautions."

Special Issue No. 8 follows and is the standard issue on proximate cause.

Special Issue No. 9 is as follows: Do you find from a preponderance of the evidence that on the occasion made the basis of this suit, the City of Austin allowed Michael Selter to get into the water above the upper dam when he could not do so with safety? In connection with this issue, you are instructed that he could not get into the water with safety, if under all the surrounding facts and circumstances in evidence, there was such danger that a reasonably prudent person would not have allowed him to do so.

Special Issue No. 10 follows and is the standard issue on proximate cause.

All of such issues were answered in the affirmative by the jury.

We overrule these points.

Under the facts that we have stated above along with the legal conclusions set out above, we hold that there was sufficient pleading to submit the issues and sufficient evidence to sustain the jury's findings thereon.

### VII.

■ Appellant's points of error thirty-six and thirty-seven, briefed together, are as follows: The court erred in refusing to submit appellant's requested Issues Nos. 7 and 8 which inquired if Michael Selter's going into the water was negligence and if such negligence was a proximate cause of his death; the court erred in refusing to submit appellant's requested Special Issues Nos. 15 and 16 which inquired if Michael Selter's failure to remove himself from the water was negligence and if such negligence was a proximate cause of his death.

We overrule these points.

Not only were appellant's requested Issues Nos. 7 and 8 global and general in nature, but a finding that Michael was negligent in going into the water above

the upper dam, and that this was a proximate cause of his death could not be supported by the evidence. It was not the going into the water that caused him to drown, but the positioning of his body in front of the gates while attempting to remove debris that led to his death.

■ It is the duty of the court to reconcile the entire verdict of the jury in an effort to make it speak the truth and the court should set aside and disregard general findings when the jury has answered specific findings that control the disposition of the case. Smith v. Chase, 405 S.W.2d 450, (Tex.Civ.App. Dallas 1966, writ ref'd n. r. e.).

Likewise, appellant's requested Issues Nos. 15 and 16 were too general and unrelated as to time. The mere failure to remove himself from the water could not have been a proximate cause of Michael's death. Michael could still be alive if he had been swimming in the water above the dam.

### VIII.

■ Appellant's point of error No. thirty-eight is the error of the court in refusing to submit appellant's requested Special Issues Nos. 12, 13 and 14 inquiring whether Michael Selter helped clean the gates in question without seeking instructions on the safest way to do so, if this was negligence, and if such negligence was the proximate cause of his death.

We overrule these points.

These issues were not supported by any pleadings. Also, there is nothing in the record that would place a duty upon Michael to seek instructions or realize the need for such instructions and therefore such failure on his part could not be negligence.

### IX.

Appellant's point of error No. thirty-nine is the error of the court in submitting its Special Issue No. 23 allowing the jury to evaluate the mental anguish suffered by

Michael Selter because there was no evidence of conscious pain and suffering, therefore mental anguish is not compensable as a matter of law.

We overrule this point.

Anna Selter, the deceased's mother, had two possible causes of action, one for the wrongful death of her son, Tex.Rev.Civ. Stat.Anno. art. 4671 et seq. and a cause of action under Article 5525 which is limited to damages sustained by the decedent prior to his death.

After McDonald saw Michael sucked into the opening, he surfaced for a quick breath of air and went back down alone to help. Michael was facing the bars and pinned against them; he pulled up a leg and as he did it was sucked into the gate. McDonald grabbed an arm and pulled, but Michael could not be pulled away by this means. McDonald testified: "I think he realized he was pinned and was pushing. He had both hands, one on this side of the gate and one on the other side on the concrete trying to push away." Michael was conscious at this time and was struggling trying to free himself; he was moving his head.

McDonald surfaced again and got Mark Hall to go down with him to pull a second time. Each grabbed an arm and pulled while bracing their feet against the dam, but to no avail. Michael was conscious and still struggling. As McDonald started to surface again, he noticed Michael still breathing. After surfacing and reaching air, McDonald saw Michael continue pushing against the dam, but he struggled only "a little bit more." Michael Selter had lost the fight.

His body was finally freed and removed from the water. McDonald saw black and blue marks along his crotch, stomach and legs. Dr. R. G. Farris examined Michael's body at the Brackenridge Hospital. He observed red-purple welts of skin on the abdomen and chest "where he was held by hydraulic pressure against the drain" and the doctor saw red froth in the upper respiratory tree. His diagnosis was accidental drowning. The death certificate showed that drowning caused Michael's death.

The appellant maintains that drowning to death did not hurt Michael and therefore his mother has no right to damages for his agony. One does not die from drowning without unpleasant changes occurring within the body—the lungs fill up with water, for one. The law does not necessarily require direct proof of or specific findings on matters of universal knowledge.

As Judge Stayton said in Texas & P. R'y Co. v. Curry, 64 Tex. 85 (1885):

"The law infers, when such injuries to the person are shown to have existed as are alleged and proved in this case, that physical pain resulted therefrom; for by common observation we know that in the ordinary operation of natural laws, pain is a necessary result of such injuries. * * * This is equally true as to mental suffering; for it is contrary to common experience and the laws of man's existence and nature that any * * * person by physical injuries may be made a cripple * * * without mental pain resulting from the changed condition."

The existence of physical and mental suffering has been inferred from the manner or type of injury in a multitude of cases holding the jury authorized to consider these elements of damage although not directly proved. 17 Tex.Jur.2d 312, Damages, § 252.

## X.

Appellant's points of error forty and forty-one are the error of the trial court in rendering judgment for $10,000 as a result of the mental anguish suffered by Michael Selter, such finding being greatly excessive; the error of the trial court in rendering judgment in the amount of $28,000 as a result of the pecuniary loss of ap-

pellee resulting from the death of Michael Selter, such finding being greatly excessive.

We overrule these points.

■ The appellant has the burden of establishing that the jury's evaluation of the damages was erroneous. Evans v. Rush, 254 S.W.2d 799 (Tex.Civ.App. Amarillo 1952, no writ); City of Dallas v. Hutchins, 226 S.W.2d 155 (Tex.Civ.App. Amarillo, 1949, writ ref'd n.r.e.).

■ The Court in Texas Consolidated Transportation Co. v. Eubanks, 340 S.W.2d 830 (Tex.Civ.App. Waco, 1960, writ ref'd n.r.e.) announced the following governing principles in dealing with the problem of excessive damages:

(1) That an appellate Court should not substitute its judgment for that of the jury;

(2) That in the absence of an affirmative showing of bias or prejudice the Courts of Civil Appeals will give every intendment to the evidence supporting the verdict;

(3) That the judgment of the jury is as good as that of the Court and it should prevail unless it appears that the verdict is influenced by passion or prejudice and is not the result of honest convictions;

(4) That the intangible elements of damage in a death case such as services, advice, counsel, nurture and care have value in addition to financial contributions and that the law has entrusted the duty of estimating their value in terms of money to the jury.

■ The evidence concerning the cause and manner of Michael's death has been reviewed above. In Mitchell v. Akers, 401 S.W.2d 907 (Tex.Civ.App. Dallas, 1966, writ ref'd n.r.e.), an award of $5,000 for mental anguish and pain to the parents of a three year old boy who drowned was upheld. A doctor estimated that the deceased probably struggled two or three minutes. By comparison in Michael's case we have two eye witnesses to all of the drowning circumstances, including the death struggle itself. A boy of Michael's age and intelligence certainly realized the hopeless predicament that he was in and in the several minutes that he struggled against an inevitability, that must have become apparent to him, a reasonable inference of suffering and mental anguish could have been drawn by the jury for their finding and award. It is not for this Court to substitute it's judgment therefor; consequently, this award should be allowed to stand.

■ With respect to the award of damages made Mrs. Selter, it was stipulated between the parties that according to the U. S. Life Expectancy tables, Michael Selter had an expectancy, as of the date he died, of 54.9 years and that Mrs. Selter's expectancy was 34.5 years.

Michael assisted his mother financially. When he died he had a paper route netting around $35 to $40 dollars a month. Previously he had a job selling donuts. The family plans were that he would soon become a grocery checker which would be a more lucrative and regular job. He spent his money for school supplies, had bought a bicycle and used his own money for gifts.

At the time of his death, Mrs. Selter did not own an automobile. Michael used his bicycle to go to the grocery store and shop for the family. Mrs. Selter's net pay at the Industrial Accident Board was about $250 a month. She was renting their home. Michael helped with the wash and with the yard. He and his mother cleaned house on weekends. In the summertime, while his mother was at work, he took care of his younger brother and sister. After his death, Mrs. Selter had to hire help. Michael was the male leader of the family.

Michael was an intelligent boy. He belonged to the National Junior Honor Society. Since beginning school his grades were excellent. Michael's eighth grade teacher, his paper route supervisor and a close neighbor all testified and described Michael as a superior young man in both talent and temperament; consequently, it was reasonable for Mrs. Selter to testify that Michael was the kind of a son she could have relied on for her various needs as she grew old.

The measure of Mrs. Selter's loss does not end with consideration of only direct financial contributions. She also lost pecuniary benefits such as her son's labor, service and attention in ministering to her various wants and necessities. Houston Electric Co. v. Flattery, 217 S.W. 950, (Tex. Civ.App. Galveston 1919, no writ); Gulf, C. & S. F. Ry. Co. v. Ballew, 66 S.W.2d 659 (Tex.Comm.App.1933).

In Flippen-Prather Realty Co. v. Mather, 207 S.W. 121 (Tex.Civ.App. Dallas, 1918, writ ref'd)., the Court in upholding a $10-000 judgment for the mother and father of a seven year boy who drowned in a well stated:

"It has been held that absolute accuracy with respect to the damages in such a case cannot be attained; that it is extremely difficult, in fact impossible, in this class of cases, to procure expert testimony as to the value of a child's services, and therefore the amount must be left to the sound discretion and common sense of the jury." (citing cases).

A similar case is M.K.T. Ry. Co. v. Hamilton, 314 S.W.2d 114 (Tex.Civ.App. Dallas 1958, writ ref'd n. r. e.). Here the mother of a 15 year old son obtained a judgment for $25,000.00. The deceased had just finished junior high school and averaged about 90 in his grades. A teacher described him as honest, well-liked, and ambitious. He helped his mother about the house and had a small job using his money for clothes and school supplies. The Dallas Court could not say that the verdict was excessive or that the finding was the result of passion or prejudice. In City of Lampasas v. Roberts, 398 S.W.2d 612 (Tex.Civ. App. Austin 1966, writ ref'd n. r. e.), this Court sustained a finding of $17,500.00 in favor of both parents of a 6 year old son killed from drinking fertilizer.

The plaintiff's prayer was for $32,400.00 but $28,000.00 was awarded. The jury obviously decided that the evidence justified the award.

## XI.

Appellant's forty-second point of error is that of the court in awarding damages under Article 5525 because no claim was ever filed therefor as required by the City Charter of the City of Austin.

We overrule this point.

Section 7 of the Austin City Charter provides in part as follows:

"Section 7. NOTICE OF CLAIMS. Before the City of Austin shall be liable for damages for the death or personal injuries of any person * * *, the person injured, if living, or his representatives, if dead, or the owner of the property damaged or destroyed, shall give the City Council or City Manager notice in writing of such death, injury, damage or destruction, duly verified by affidavit, within forty-five days after same has been sustained, stating specifically in such written notice when, where, and how the death, injury, damage or destruction, occurred, and the apparent extent of any such injury, the amount of damages sustained, the actual residence of the claimant by street and number at the date the claim is presented, * * *"

Appellant contends that the notice of claim filed by appellee is for damages suf-

fered by her. That such notice is not applicable to damages incurred by Michael Selter prior to his death which she and the father of Michael Selter became entitled to by operation of Article 5525. That appellee was seeking only those damages to which she might be entitled under Article 4671 et seq. That there was no claim whatsoever filed by Gordon Selter, the father of Michael Selter, who assigned his cause of action to appellee. That the Charter of the City of Austin requires that the person claiming damages or his representative must file the notice of claim. That this was not done in this instance, therefore, there should be no recovery whatsoever by appellee for any damages under Article 5525.

We do not agree with this analysis of the article.

Michael Selter had never married and had no children. His mother and father were divorced and he lived with his mother. He died intestate. There was no necessity for administration of his estate. This was alleged in plaintiff's petitions without exception or objection.

Mrs. Selter was the only logical person to give the defendant notice concerning Michael's death. She was the only person sustaining any real pecuniary loss. She was her son's chief heir. No administrator was appointed because none was needed. Michael could not give notice but his representative could—and she did.

The notice filed was "for *the death of my son* * * * and * * * for damages sustained by me as *a result of his death.*" (Emphasis added.) Her claim was for the damages to which she was entitled and the defendant in its brief admits she was entitled to damages by operation of Article 5525.

The purpose of notice provisions in City Charters is to give cities a chance to investigate accidents soon after they occur to guard against unfounded claims and to gather fact information for settlement or trial. City of Waco v. Landingham, 158 S.W.2d 79 (Tex.Civ.App. Waco 1942, writ ref'd); City of Houston v. Holden, 336 S.W.2d 193 (Tex.Civ.App. Eastland 1960, writ ref'd n. r. e.); Penny v. City of Texarkana, 400 S.W.2d 797 (Tex.Civ.App. Texarkana 1966, writ ref'd n. r. e.).

In the Holden case above, the plaintiff stated in his notice that the accident occurred when a city truck went forward and hit him, but his trial pleadings and proof showed that the truck was engaged in backing when the collision happened. The Court held the variance to be not so material that it was calculated to mislead the city, to deprive it of investigative opportunities, or to render it unable to guard against a fraudulent claim. The cause of action described in the notice and in the pleadings and proof was the same.

In City of Houston v. Glover, 355 S.W.2d 757 (Tex.Civ.App. Waco 1962, writ ref'd n. r. e.), a widow sued for the death of her husband. There was no administration. The claim filed stated that deceased sustained serious injuries resulting in death. The city contended that since the widow's claim did not mention pain and suffering (recoverable by virtue of Article 5525), she could not collect for it. The Court summarily held that the notice filed was sufficient to apprise the city of this element of damages. Mrs. Selter's claim for the drowning death of her son was similarly sufficient to apprise the defendant of the mental anguish (recoverable by virtue of Article 5525) element of damages.

The plaintiff in City of Port Arthur v. Wallace, 167 S.W.2d 549 (Tex.Civ.App. Beaumont 1942), affirmed in 141 Tex. 201, 171 S.W.2d 480 (1943), injured his eye due to the city's negligence. He gave notice stating: "The apparent extent of said injuries and damages were * * * a severe, deep cut under the left eye, * * *." Fourteen months later while cutting kindling he was hit in the same eye by a piece

of wood. Subsequently the eye was removed and plaintiff sued for the entire loss maintaining that the first injury was a cause of it. The city contended failure of timely notice. The court held the first notice, timely given, sufficient to advise the city of all injuries to the eye resulting from the first injury.

The point of the Holden, Glover and Wallace cases applicable here is that that if the city is given fair notice of when, where and how the incident happened and a general description of the resulting injuries or losses, then the purpose of requiring notice has been satisfied.

This Court has overruled an attack on a notice giving the occurrence date as August 30, 1960, when it truly happened on August 31. City of Temple v. Wilson, 365 S.W.2d 393 (Tex.Civ.App. Austin 1963, writ ref'd n. r. e.). It regarded this criticism of the notice as hypercritical and without substance especially since the damages were caused by a city employee in a city truck. The Court stated:

"The charter provision under consideration does not require letter perfect compliance. It does require reasonably substantial good faith compliance."

Michael Selter's death occurred on city property and was witnessed by city employees. His mother's notice was a claim for all the damages she was entitled to by reason of her son's death. The father assigned his entire cause of action to Mrs. Selter. The defendant was not and cannot be sued by anyone else. A notice of death reasonably includes what the law allows the survivor to claim. In no way can the defendant show that it was misled, harmed or prejudiced by the notice filed in this case. It sufficiently apprised the defendant of a death and the damages which are legally recoverable as a consequence.

The judgment of the trial court is affirmed.

Affirmed.