**STRUCTURAL METALS, INC., et al.,
Appellants,**

v.

**Grover IMPSON et al., Appellees.**

**No. 591.**

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 29, 1972.

Rehearing Denied Jan. 11, 1973.

Keys, Russell, Watson & Seaman, M. W. Meredith, Jr., Corpus Christi, for appellants.

Edwards & DeAnda, William R. Edwards, Joe Longley, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This case has been remanded to this Court by the Supreme Court for consideration of the excessiveness of the jury verdict. Impson v. Structural Metals, Inc. et al. and on Motion for Rehearing, 487 S. W.2d 694. This action for damages originally arose out of a tragic highway accident between a truck owned and operated by the defendants Structural Metals, and Joe Polanco, respectively, and an automobile in which three people were killed, including Mrs. Impson. Mr. Grover Impson and his daughter, Mrs. Ida Frances Le-Bourveau were passengers and were seriously injured. See 469 S.W.2d 261 (Tex. Civ.App.—Corpus Christi, 1971, writ granted) for complete details. It is the excessiveness of the damages awarded to the two passengers that we now consider.

Mrs. Ida Frances LeBourveau was first treated by Dr. Howard E. Lancaster of Beeville in the emergency room of the hospital immediately after the accident. When he examined her he found that she had some broken ribs, some air in her chest, a fracture of her leg below the knee, plus general bruises. The next day after the accident Mrs. LeBourveau was examined by Dr. Joseph Wright, an orthopedic surgeon, of Corpus Christi. He found that she had multiple fractures of her ribs on both the right and left sides, had free air outside of her lung from a punctured lung, plus fractures in her right pelvic area and a fracture of her left leg between her knee and ankle. Mrs. LeBourveau required that a tube be placed into the periphery of the chest to drain the air. In a few days it was found to be necessary to place her under general anesthesia to reset the leg fractures. With respect to her leg fracture, there was one fracture through the fibia and three fractures through the tibia bones. On final examination by Dr. Wright just prior to the trial, (eighteen months after the automobile accident) Mrs. LeBourveau was still using a cane when she walked. Dr. Wright found that she had decreased strength in the quadriceps muscle (the great extensor muscle of the front of the thigh) near the left knee, plus discomfort in the left ankle and a flattening of her arch. The doctor testified that Mrs. LeBourveau stated that she tired easily, did not sleep well, recalled and dreamed of the automobile accident frequently. The doctor thought that she had aged an abnormal amount since the accident. Dr. Wright stated that he thought Mrs. LeBourveau's ankle injuries and discomfort would have some permanent residual effect.

Special Issue No. 7 was the damage issue with respect to the injuries of Mrs. LeBourveau. The issue inquired in nine separate elements, the damages she sustained. The jury found total damages for all injuries in the amount of $46,227.00. Defendants' only attack as excessive, the damage awarded to Mrs. LeBourveau in subdivision "f". There the jury answered that "the loss of earning capacity and capacity to perform services in the home which in reasonable probability Mrs. LeBourveau would sustain in the future", amounted to: $27,152.00.

The evidence clearly shows that because of the injuries and the pain resulting from the accident, Mrs. LeBourveau was unable to begin a teaching career that would have paid her at the outset $6,239.00 per year. Additionally, there was evidence that showed that she was unable to perform any but the very lightest of household chores. Other evidence indicated that Mrs. LeBourveau had stated that her nerves were not the same as before the accident and that now she was liable to "blow a fuse" in spite of the fact that she had previously been a very, very even tempered person. Her husband testified that his wife has a tendency to be irritated much more rapidly then she used to and her nerves seem frayed. Her doctor testified that the type of injuries she sustained would cause a person to have anguish and worry. All of which reflects on her ability to perform adequately in the home and on the job.

Turning next to the evidence of the injuries of Mr. Grover Impson, the record showed that he was 78 years of age at the time of trial. His wife was killed in the automobile accident. He and his wife had been married for 55 years. Since the accident Mr. Impson had lost his eyesight from a cause unrelated to the accident. This caused him to be unable to do as much for himself as he could have done prior to the accident. Dr. Lancaster, his treating physician, testified that the initial examination showed that Mr. Impson had received some damage to his knees. On subsequent examination it was disclosed that Mr. Impson had trauma to his limbs and most seriously in his knees. The doctor testified that Mr. Impson was suffering from arthritis and that this pain was increased as a result of the accident. Dr. Wright of Corpus Christi stated that in his opinion the symptoms of Mr. Impson's discomfort would become worse as a result of the injuries received in the collision. Mrs. LeBourveau testified that her father had aged at least ten years in the past two years since the date of the accident. Because of the loss of his eyesight, Mr. Impson was not capable of looking after his own personal needs. Prior to the accident his wife had tended to his personal needs and care. The evidence showed that he was in physical pain from the injuries caused by the accident which had aggravated his condition of arthritis. His son-in-law testified that Mr. Impson had been a man of "rock-hard character" before the accident but now had a tendency to become emotional. The defendants complain of subdivision (d) and (g) of special issue No. 8. In these subdivisions the jury allowed Mr. Grover Impson $5,000.00 for mental anguish suffered in the past and $5,000.00 for mental anguish to be suffered in the future. There is little doubt that Mr. Impson suffered intense pain of body and of his mind.

In addition, the jury awarded Mr. Impson $10,000.00 for the loss of his wife of which the defendants complain. Mrs. LeBourveau, daughter of Mr. Impson, testified that while her mother was living, she was very helpful to everyone. She stated that Mrs. Impson was a doer and helper and excellent cook and "she was constantly at Daddy's beckoning call". She further stated that her mother always looked after her father when he was ill. The son-in-law testified that the late Mrs. Impson had a very close relationship with her husband and was very protective of him simply because of her desire to take care of him.

Other witnesses testified that Mrs. Impson was a good wife, a good person, a good partner, a nice woman, a very active and vital woman, the finest companion that anybody could have and a fine hostess.

■ We have given this case very serious consideration and have re-read the testimony concerning those matters making up the elements of damage that was considered by the jury of which the defendants here complain. Mental anguish allegedly suffered by Mr. Impson appears to be rather large. We believe that the jury actually considered the evidence and the lawful inferences therefrom, and the verdict should stand. Although it may be possible that we might disagree with the jury as to the amount of each award to the various parties in this case, yet that function is not for us to decide. It lies exclusively within the province of the jury. We should not disturb the award of the jury unless we believe that it was motivated by matters not considered as evidence or upon conjecture and not facts. McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710 (1943).

■ We have therefore carefully considered the question of excessiveness, and have determined from the entire record that the verdict was not excessive to such an extent that this Court would be justified in disturbing the jury's findings. In considering the point of excessiveness we are required of course to review the evidence most favorable to the award. Since the amount of the award as considered is supported by the evidence and does not offend the conscience of this Court, it must stand. J. M. Dellinger, Inc. v. McMillon, 461 S.W.2d 471 (Tex.Civ.App.—Corpus Christi 1970, ref'd n. r. e.); Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017 (1950); Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959); Texas Consolidated Transportation Co. v. Eubanks, 340 S.W.2d 830 (Tex.Civ.App.—Waco 1960); Tom Brown Drilling Company v. Nieman, 418 S.W.2d 337 (Tex. Civ.App.—Eastland 1967, n. r. e.); Sunset Brick & Tile, Inc. v. Miles, 430 S.W.2d 388 (Tex.Civ.App.—Corpus Christi 1968, n. r. e.).

The judgment of the trial court is affirmed.