George E. CLEVELAND, Appellant,

v.

Robert L. EDWARDS, M.D., Appellee.

No. 771.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

May 2, 1973.

Rehearing Denied May 23, 1973.

Harry L. Tindall, Tindall & Foster, George M. Bishop, Tipton & Bishop, Houston, for appellant.

Bill Chanslor, James G. Sargent, Houston, for appellee.

CURTISS BROWN, Justice.

This suit involves alleged medical malpractice.

The trial was to a jury, but the court instructed a verdict in favor of the defendant at the close of plaintiff's evidence. Appeal was duly perfected from this action by the trial court.

◼ When reviewing an instructed verdict we must consider the evidence in the light most favorable to appellant and indulge every reasonable intendment from the evidence in favor of appellant and against the directed verdict. Anglin v. Cisco Mortg. Loan Co., 135 Tex. 188, 141 S.W.2d 935 (1940); Rhinetubes, Inc. v. Norddeutscher Lloyd, 335 S.W.2d 269 (Tex.Civ.App.—Houston 1960, writ ref'd n. r. e.).

◼ This case is governed by the Supreme Court opinion in Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (1949) in which it was clearly established that in medical malpractice cases it is required that the plaintiff establish by proof from a doctor of the same school of practice as the defendant (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries. See also Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933 (1953), jdgmt. set aside on other grounds, 153 Tex. 82, 264 S.W.2d 689 (1954); Wilson v. Scott, 412 S.W.2d 299 (Tex.Sup.1967); and Webb v. Jorns, 488 S.W.2d 407 (Tex.Sup.1972). Appellant claims to have met this burden and we agree.

Appellee questions the legal sufficiency of the evidence to produce jury issues, but more realistically contends that appellant plead one case and proved another.

The Supreme Court of Texas in Gulf, Colorado & Santa Fe Railway Co. v. Bliss, 368 S.W.2d 594, 599 (Tex.Sup.1963) held that the petition should be construed as favorably as possible to the pleader. Bliss also held that the Court will look to the pleader's intendment and that every fact will be supplied that can reasonably be inferred from what is specifically stated.

◼ In any event appellant specifically alleged malpractice of the defendant in permitting the plaintiff to leave the hospital without correcting the improper closing of the incision resulting in a ventral hernia.

In supporting his case appellant called Dr. Louis A. Inseneti. Dr. Inseneti practiced in New Orleans, Louisiana, but had a Texas Medical License and actively practiced in the Houston area for ten years. He was a general surgeon (as was Dr. Edwards) and was familiar with the standards of medical treatment of gastric ulcers and gall bladders in the Gulf Coast and Freeport area. Appellee himself testified

that such treatment would not be different in Brazoria County than it would be in Harris County, New Orleans or elsewhere in the United States. The trial court admitted Dr. Inseneti's testimony. He was fully qualified to give the expert opinion required by Bowles v. Bourdon, supra.

The record reveals that following a fit of coughing plaintiff suffered a tearing or disruption of the surgical wound. Appellee performed additional surgery for the purpose of correcting such dehiscence. Thereafter, again following coughing, the wound opened and he was discharged in this condition with the surgery uncorrected. In this connection Dr. Inseneti testified:

"Q Doctor, do you have an opinion whether it would be in violation of standard medical practice as exercised in this area to release a patient from the hospital that had disrupted the surgical wound in whole or in part?

A It is against good surgical practice.

Q And what are the dangers that an individual faces if he is released from the hospital with part of the surgical wound not intact?

A There will be a dehiscence, and particularly if he has complications of coughing.

Q Do you have an opinion as to whether sound medical practice, as exercised in this area, could have prevented the ventral hernia of George Cleveland?

A Yes, sir.

Q What is that opinion?

A That it could have prevented it had the proper method been taken in time as indicated."

In addition to the above testimony of Dr. Inseneti which very clearly raised medical proof of both malpractice and causation with respect to a matter specifically plead, appellant offered the testimony of Dr. Bennie Cleveland as follows:

"Q What is the danger of releasing a patient that has a surgical incision all the way open to the peritoneum?

A If the primary wound itself is open infection can develop; however, there are occasions in which patients are released from the hospital with a drain through a stab wound that goes through all of the layers that causes no problem; but the tearing of an abdominal wound, the primary danger would be one of infection.

Q Would that not also be the ventral hernia?

A Yes, sir, it would.

Q And so, if George Cleveland gave to you the history of having been dismissed from a hospital with part of the surgical wound not intact, penetrating to the peritoneum at the supermost portion of his surgical incision, would you, in your opinion, say that was the ultimate cause of the ventral hernia you found on him?

A Yes, it most certainly probably was".

We have also reviewed this record in light of the fact that the case must be retried and reach the conclusion that competent medical evidence raises other issues of malpractice and causation as required by law. The court should not have instructed a verdict.

We reverse and remand this case for a new trial.