Billy H. LEE, M.D., Appellant,

v.

Brenda ANDREWS et al., Appellees.

No. 8670.

Court of Civil Appeals of Texas, Amarillo.

Dec. 13, 1976.

Rehearing Denied Jan. 10, 1977.

Stone, Stone & Chambers, John C. Chambers, Gibson, Ochsner, Adkins, Harlan & Hankins, Amarillo, for appellant.

Gibbins & Spivey, Bob Gibbins, Austin, for appellees.

ELLIS, Chief Justice.

Brenda Andrews, suing individually and in behalf of her two minor daughters and her deceased husband's estate, and Joe Bert Andrews, Sr., the father of the deceased, instituted this medical malpractice suit against Plains Memorial Hospital and Dr. Billy H. Lee for the wrongful death of Joe Bert Andrews, Jr. The trial court rendered judgment on the jury's verdict favorable to the plaintiffs and against Doctor Lee. No liability was found against the hospital. The doctor-defendant has appealed from the judgment. We affirm the judgment of the trial court.

On June 3, 1974, Joe Bert Andrews, Jr. entered Plains Memorial Hospital in Dimmitt, Castro County, Texas, for the purpose of undergoing a hemorrhoidectomy. Andrews was thirty-eight years old and otherwise in good health. Dr. Billy Lee performed the operation on June 4, 1975, and Andrews was returned to his room in good condition. On June 5, it was discovered that Andrews was retaining urine and at 6:00 p. m., Robert Froehner, a freshman medical student, catheterized Andrews to

extract the accumulated urine. This catheterization process involved the insertion of a tube into the outer urethral opening, through the urethra and into the bladder. By 10:45 p. m., Andrews' scrotum was swollen to three or four times its normal size and Doctor Lee was notified of this development. At 11:00 p. m., Andrews was catheterized again and by 12:00 midnight he was awake and complaining of severe pain. Doctor Lee ordered an ice pack applied to Andrews' scrotal area. The swollen condition continued on June 6 and Andrews continued to require catheterization to void.

On June 7, Brenda Andrews became extremely concerned about her husband. His pulse was not ascertainable that morning. On the previous day she had gone to Doctor Lee and inquired as to the possibility of serious infection in the testicle area. No treatment was administered or directed by Doctor Lee for infection. The next day, June 8, Andrews fainted on three separate occasions; on each such occasion oxygen was administered. Doctor Lee then ordered intravenous feeding for Andrews. His blood pressure was inconsistent and erratic. Later that day Doctor Lee consulted with a doctor from Lubbock, Texas,—Doctor Pappas—who saw Andrews and had him transferred immediately by ambulance to Methodist Hospital in Lubbock.

At the Methodist Hospital's intensive care unit, Andrews was examined by Dr. Robert Salem. He diagnosed Andrews as having a local infection around the scrotum (cellulitis) and a blood infection (septicemia) with accompanying shock.

Andrews died on June 9. An autopsy by Dr. William H. Long revealed that the probable cause of death was septicemia (blood infection) with shock. In their wrongful death action, the plaintiffs alleged that the negligent acts of Plains Memorial Hospital and Doctor Lee caused Andrews' death. Although their pleadings contain other specific allegations, proof was adduced at trial which tended to support the plaintiffs' theory that Andrews' post-operative catheterization(s) tore his urethra and that urine migrated from his bladder to his scrotum; there an infection allegedly began which spread to other parts of his body. This presumably caused shock and, eventually, death. The plaintiffs contended that Doctor Lee was negligent in not diagnosing and treating Andrews' infection earlier and in failing to consult a specialist at an earlier time.

After a trial on the merits, the jury exonerated the hospital. The jury found, however, that Doctor Lee's negligence proximately caused Andrews' death. Brenda Andrews was awarded $300,000.00 as compensation for the loss of her husband. Each of her two minor children was awarded $85,000.00. The decedent's estate was awarded $2,000.00 for his conscious mental anguish and pain. Joe Bert Andrews, Sr. (the decedent's father) was awarded $5,000.00. Also, there was an award of $2,139.25 for reasonable funeral expenses. Judgment was rendered in accordance with the jury's verdict. In his appeal Doctor Lee has urged seventeen points of error.

In his first point of error, Doctor Lee has directed our attention to some expert testimony which, he has argued, "invaded the province of the jury." The substance of Lee's complaints is that the plaintiffs' medical experts testified to their opinions and conclusions on the ultimate issues in the case—negligence and proximate causation. Lee has argued that conclusions on ultimate issues are for the jury and only the jury to draw.

■ Initially, we refer to the basic standards in malpractice cases set out in the supreme court's decision in *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779 (1949). In that case the court held that the medical malpractice plaintiff must meet a two-pronged burden of proof. He must have a qualified expert testify to the effect that (1) the defendant doctor was negligent and (2) that such negligence was a proximate cause of the plaintiff's injuries.

Although Doctor Lee does not question the foregoing standards, he has argued that the expert testimony in this case was objectionable because of the *form* in which it was admitted. According to Lee, certain

words and phrases cannot be uttered by the plaintiff's medical expert because of the possibility of invading the province of the jury. In our analysis of Doctor Lee's contentions, we have considered certain evidentiary rules developed since *Bowles v. Bourdon* was decided and the particular manner in which they have been applied in regard to negligence and causation.

The supreme court's decision in *Snow v. Bond*, 438 S.W.2d 549 (Tex.1969) imposed restrictions on the type of expert testimony which can be used to prove a defendant doctor's negligence. The court stated that "[a] medical expert is not competent to express an opinion . . . ." as to what constitutes "malpractice" or "negligence" or " . . . what a reasonable and prudent doctor would have done under the same or similar circumstances . . . ." *Id* at 550–51. These are conclusions which only the trier of facts may draw, and testimony to that effect should be excluded. Following *Snow v. Bond*, it has been held that the expert cannot testify that the defendant committed "malpractice." *Bender v. Dingworth*, 425 F.2d 378 (5th Cir. 1970). He cannot testify that the defendant's acts constituted negligence or give testimony as to what a reasonably prudent doctor would have done. *Christian v. Jeter*, 445 S.W.2d 51 (Tex.Civ.App.—Waco 1969, writ ref'd n. r. e.).

On the other hand, he *can* testify as to what medical practices are "correct" in certain circumstances. *Prestegord v. Glenn*, 441 S.W.2d 185 (Tex.1969). Further, he can testify that certain hypothetical acts (shown by independent evidence to have been committed by the defendant doctor) are "against good [medical] practice. . . ." *Cleveland v. Edwards*, 494 S.W.2d 578, 580 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ). He also can testify that a doctor who failed to perform certain acts (shown by independent evidence not to have been performed by the defendant) would fall below the "standard of conduct" of other doctors. *Martisek v. Ainsworth*, 459 S.W.2d 679, 680 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.) (holding such

testimony sufficient to raise a fact question on the negligence issue). Further, the medical expert can give testimony which indicates that certain steps should have been taken to meet the standards of good medical practice. *Seeley v. Eaton*, 506 S.W.2d 719 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n. r. e.).

In this case, plaintiffs' counsel questioned Dr. Ray E. Showery concerning possible deviations from applicable standards by Doctor Lee in his diagnosis and treatment of Mr. Andrews' condition (based upon a review of the record, including hospital, autopsy and depositions). Doctor Showery responded:

I felt there was ample evidence to suggest earlier treatment and referral, and therefore, my conclusion was that, If I— the word 'malpractice' was committed, at least timely treatment was not awarded this gentlemen in that errors had been made which went unrecognized, untreated even though they were obvious.

Doctor Showery also testified that treatment should have begun on the evening of June 5; that Andrews should have had a urologic consultation on June 5; and that Doctor Lee should have performed an indwelling catheterization following the scrotal swelling. Later Dr. Daniel P. McCarthy testified that Andrews should have had a urologic examination three or four days sooner.

The above described portions of the testimony of Doctors Showery and McCarthy state, in effect, that Doctor Lee was *wrong* in the way he treated Andrews. *Snow v. Bond* and the cases which have followed it preclude the medical expert from passing judgment on the correctness or incorrectness of the defendant doctor's conduct. He can inform the jury of good medical standards in particular circumstances. He may even express an opinion that some specific act (which the plaintiff may prove by independent evidence to have been done by the defendant) would not conform to good medical practice. He may not, however, declare directly that the defendant doctor committed a breach of good

medical practice. That is a matter for determination by the fact finder. With proper application of these rules, the jury will be restrained from "forego[ing] independent analysis of the facts and bow[ing] too readily to the opinion of an expert. . ." McCormick, *Some Observations Upon the Opinion Rule and Expert Testimony*, 23 Texas L.Rev. 109, 117 (1945). For this reason, the testimony summarized in the preceding paragraph was inadmissible. Doctor Lee also has argued that some of the medical expert testimony bearing on the subject of proximate causation was inadmissible. We disagree.

The supreme court's decision in *Bowles v. Bourdon* not only requires proof of negligence; the plaintiff must also prove that the defendant's negligence proximately caused his injuries. In the year following the decision in *Snow v. Bond* (which dealt with the negligence aspect), the court in *Lenger v. Physician's General Hospital, Inc.*, 455 S.W.2d 703 (Tex.1970) set down evidentiary rules relating to proof of causation. There the court held in a negligence case such as this one, " . . . it is essential that the evidence show at least a reasonable probability that plaintiff's complications were caused by defendants' negligence." *Id.* at 706.

■ Judicial opinions rendered since *Lenger* was decided indicate that proof of a "reasonable probability" of causation can come in two forms of expert testimony. First, the medical expert can offer direct testimony that the defendant's acts were or were not, as the case may be, in reasonable probability, the cause of plaintiff's injury. *See Lenger v. Physician's General Hospital, Inc., supra; Gibson v. Avery*, 463 S.W.2d 277 (Tex.Civ.App.—Fort Worth 1970, no writ). *Cf. Conrey v. McGehee*, 473 S.W.2d

617 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.). In the absence of direct testimony concerning proximate causation, the jury sometimes may be allowed to rely on its general experience and common sense to determine causation. *Lenger v. Physician's General Hospital, Inc., supra; Cleveland v. Edwards, supra; Martisek v. Ainsworth, supra.*

■ In the instant case, Doctor Lee complained that certain testimony tending to prove proximate causation was inadmissible because it invaded the province of the jury.[1] From our consideration of *Lenger* and the cases since decided, it is our opinion that considerable latitude should be allowed the expert who offers testimony tending to prove proximate causation. Testimony may be given that the defendant's acts in reasonable probability resulted in the plaintiff's injury and death. In many cases a layman would be incompetent to reach a conclusion on the causation question without assistance from the medical expert. In this case, it is our opinion that the concern that the jury may have attached too much emphasis on the experts' testimony is outweighed by the jury's need for the experts' guidance in connection with the causation issue. For these reasons we hold that the expert testimony admitted tending to prove proximate causation was not error.

■ Thus, we have concluded that only the testimony by Doctors McCarthy and Showery which tended to declare directly that Lee's conduct constituted negligence was improperly admitted. If this erroneous evidentiary ruling was not calculated to cause and probably did not cause rendition of a verdict different from the one rendered, the error was harmless. *Gasperson*

---

1. For example, Doctor Showery testified:

Q. . . . Now, Dr. Showery, based on those same qualifications, that is, your familiarity with the general recognized, accepted standards of good, ordinary medical care for a general practitioner in that area in question as well as the entire state, your review of the hospital records, the autopsy, these depositions, do you have an opinion as to whether or not in reasonable medical probability Mr.

Joe Bert Andrews would have, in fact, recovered and be alive today had proper diagnosis and treatment of his infection been made or a timely referral to a specialist been made:

A. I have an opinion.

Q. What is that opinion, please, Doctor?

A. That had timely treatment been instructed even here in Dimmitt or early referral, there would have been survival for Mr. Andrews.

*v. Chrisite, Mitchell & Mitchell Co.,* 418 S.W.2d 345 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n. r. e.). In making this determination, we are obligated to consider the record *as a whole. Shelton v. Belknap,* 155 Tex. 37, 282 S.W.2d 682 (1955).

■ After reviewing the entire record, we are not convinced that the error resulted in an improper jury verdict. In the light of the whole record, including the medical records and the admissible medical testimony by the various doctors (including Doctor Lee), some of which is reviewed in considering points 4–7, infra, it is our opinion that the result would have been no different had the error not been committed. The amount of inadmissible testimony is rather small when compared with the great amount of other testimony and evidence tending to prove Lee's negligence, and it came in isolated instances. We, therefore, hold that the asserted error was harmless. Tex.R. Civ.P. 434. Point 1 is overruled.

■ In his second point of error Doctor Lee has argued that Dr. Daniel McCarthy was incompetent to give expert testimony for the plaintiffs. The crux of Lee's argument is that McCarthy is a New York pathologist and as such was incompetent to testify against a Texas family practitioner. Lee has recognized that the admission of expert medical testimony is largely discretionary with the trial court. *Louis v. Parchman,* 493 S.W.2d 310 (Tex.Civ.App.— Fort Worth 1973, writ ref'd n. r. e.). It has been argued, however, that the trial court abused its discretion in admitting McCarthy's testimony.

■ The fact that McCarthy was from New York does not disqualify him from testifying. *Hart v. Van Zandt,* 399 S.W.2d 791 (Tex.1965). Under *Hart,* a doctor from another state is competent to testify in Texas proceedings. *See also Louis v. Parchman, supra* (involving a New York physician's testimony). Furthermore, the fact that McCarthy specialized in pathology while Lee was a general practitioner does not disqualify McCarthy from testifying, provided he is familiar with the standards

applicable to a general practitioner. It was shown that McCarthy was familiar with such standards. The trial court's action in allowing McCarthy's testimony was not an abuse of its discretion. See *Miles v. Meadows,* 309 S.W.2d 284 (Tex.Civ.App.—Dallas 1958, no writ) for an analogous case involving doctors from different schools of medicine. Point 2 is overruled.

■ In his third point of error, Doctor Lee has complained that the trial court erred in admitting the testimony of Sidney Bullock, a nurse at Plains Memorial Hospital. Bullock testified, over objection, that by 7:00 a. m. on June 7, 1974 "this man [Andrews] was getting in trouble." Lee, in his brief, had argued that this testimony was inadmissible lay testimony. In his motion for new trial, however, Lee stated only that Bullock's testimony was "immaterial, irrelevant and/or incompetent." This objection is tantamount to no objection at all. *Capitol Hotel Co. v. Rittenberry,* 41 S.W.2d 697 (Tex.Civ.App.—Amarillo 1931, writ dism'd). Under Tex.R.Civ.P. 374, assignments of error must be set forth specifically; general assignments will not support a point of error. *Smith v. Brock,* 514 S.W.2d 140 (Tex.Civ.App.—Texarkana 1974, no writ). Lee's assignment that the testimony was "immaterial, irrelevant and/or incompetent" was not sufficiently distinct to support his third point of error. The ground of error was, therefore, waived. Tex.R.Civ.P. 374. Even if this were not the case, however, we are of the opinion that the testimony was admissible. It is not required that a witness be expert in medical matters to give an opinion as to observed physical condition. See 2 C. McCormick and R. Ray, Texas Law of Evidence, § 1427 at 271–273 (2d ed. 1956), and authorities cited therein. Additionally, this nurse had many years of experience in reading and interpreting charts reflecting data as to a patient's condition. In view of the foregoing, appellant's third point is overruled.

■ In points 4–7 Doctor Lee has complained that there is no evidence or insufficient evidence to support the jury's affirmative finding on negligence and proximate

causation. According to *Bowles v. Bourdon,* these two elements must be proved "by a doctor of the same school of practice as the defendant." 219 S.W.2d at 782.

Doctor Lee testified at the trial. He stated that, in his opinion, Andrews' problems on June 7 were due to a drug reaction although he admitted that the medicine Andrews was taking could not cause scrotal swelling. At one point Lee testified that there was no way Andrews could have been saved although he later admitted that if he had given Andrews antibiotics four days before he died, he might have lived. Lee testified that he never considered that Andrews might have a ruptured urethra although he admitted that Doctor Pappas' diagnosis was to the effect that the urethra was infected. Lee admitted that Andrews' elevated white blood cell count and scrotal swelling were symptomatic of infection. He also admitted that he failed to administer antibiotics to Andrews and that if they were required, his failure was a deviation from recognized standards of good medical practice. Lee admitted that on the morning of June 6, Brenda Andrews suggested to him that her husband might be suffering from an infection and that he took no steps to treat the patient for infection. He waited until June 8, the day before Andrews died, to consult another doctor.

Dr. Raymond E. Showery, the plaintiffs' medical expert, testified to his opinion that Andrews' urethra was torn when he was catheterized and that urine passed through the tear and into the scrotum. There, an infection developed which eventually caused Andrews' death. According to Showery, germs are always introduced into the urethra upon catheterization. Hospital records indicated that no antibiotics were administered to Andrews prior to June 8. Showery testified that most doctors routinely administer infection-fighting antibiotics as a part of the catheterization procedure, and with repeated catheterizations, antibiotics are mandatory in order to salvage life.

Dr. William H. Long, the pathologist who performed Andrews' autopsy, testified that gram negative septicemia (infection) was the probable cause of Andrews' death. A urethral tear is a "fairly common occurrence" and it is "very likely" that a catheter ruptured Andrews' urethra and caused a deadly infection (septicemia). Long testified that, according to recognized medical standards, the events which transpired at Plains Hospital should have been sufficient notice that something untoward had happened to the patient.

Dr. Robert Salem agreed that the events at Plains Hospital would have alerted him that something was amiss with Andrews. Salem had examined Andrews upon his arrival at Methodist Hospital. He testified that he had diagnosed Andrews as having cellulitis (local infection) and septicemia (blood infection). At the time he examined Andrews, he suspected that the infection had originated in the urinary tract. If he had been treating Andrews earlier, he would have consulted a urologist about any possible urethral injury. Salem testified that an ordinary general practitioner should be able to recognize infection and treat it accordingly.

Dr. Daniel McCarthy was the last doctor to testify. In his opinion, Andrews died from overwhelming septicemia which had begun developing on the first post-operative day—after the first catheterization.

We have considered all of the medical expert testimony, including that of the defendant's medical expert, Dr. William Anthony. In our opinion there is sufficient evidence of probative force to support the jury's finding that Doctor Lee was negligent in treating Andrews. Moreover, the jury's finding on proximate causation is adequately supported by admissible expert testimony that Andrews would have survived if he had received proper therapy or a specialist's consultation earlier. Points 4–7 are overruled.

In his eighth point of error, Doctor Lee has complained that the trial court erroneously defined "ordinary care" in its charge. This point, he states, is germane to assignments of error XII and XIX of his motion for new trial.

 Assignment of error XII refers only to the standard of care established by the evidence. It does not complain of the court's charge and, therefore, cannot form a basis for the eighth point of error. Assignment of error XIX states:

> The court erred in overruling this Defendant's Sixth Objection to the Court's Charge.

This assignment is not sufficient to support the eighth point of error. An assignment of error in a motion for new trial which merely directs the trial court to scan a party's objections without setting forth those objections distinctly cannot be a predicate for a point of error on appeal. Tex.R. Civ.P. 320–322, 374; *Wagner v. Foster,* 161 Tex. 333, 341 S.W.2d 887 (1960). Because Doctor Lee's motion for new trial did not set forth specifically the objection now made to the court's charge, his eighth point of error was not preserved and cannot be considered on appeal. Even assuming the point was not waived, Doctor Lee has failed to cite any supporting authority in his argument. We do not find that the definition submitted constitutes an abuse of discretion under the facts of this case. *See Webb v. Jorns,* 488 S.W.2d 407 (Tex.1972).

Lee's ninth point is directed to the form in which the trial court submitted the negligence issue to the jury. The issue was submitted in the following form:

### SPECIAL ISSUE NO. 1A

 Do you find from a preponderance of the evidence that Dr. Billy H. Lee was negligent in his diagnosis and/or medical care and treatment of Joe Bert Andrews, Jr., deceased, after the operation in question?

Answer "We do" or "We do not"

ANSWER: <u>We do</u>

Lee has pointed out that the pleadings and testimony allege several acts or omissions by Lee which, if proved, would constitute negligence. He asserts that the submission of the negligence issue so broadly has left

him unable to ascertain which of the alleged acts or omissions complained of constituted negligence in the jurors' minds.

Special issue submission in Texas is controlled by Tex.R.Civ.P. 277. The applicable portion of that rule provides:

> It shall be discretionary with the court whether to submit separate questions with respect to each element of a case or to submit issues broadly. It shall not be objectionable that a question is general or includes a combination of elements or issues.

The significant aspects of permitting broad submissions of issues in negligence cases have been discussed in various legal articles. *See* Pope, *A New Start on the Special Verdict,* 37 Tex.B.J. 335 (1974); Note, *The Revision of Rule 277 Allows a Court to Submit Issues Broadly in a Negligence Case,* 7 Tex.Tech.L.Rev. 133 (1975). The decisions construing the rule, however, have been consistent in their approval of the broader charge. *Mobil Chemical Co. v. Bell,* 517 S.W.2d 245 (Tex.1974); *Members Mutual Insurance Co. v. Muckelroy,* 523 S.W.2d 77 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.). Under these authorities, we hold that the negligence issue was not subject to the objections urged. Point 9 is overruled.

Points 10 and 11 attack the legal and factual sufficiency of the evidence sustaining the jury's award of damages for Andrews' conscious pain and suffering. The jury awarded $2,000.00 for this item and Lee has argued that the evidence does not show Andrews' pain to have been any greater than that which normally attends a hemorrhoidectomy.

 The jury, however, was instructed not to compensate Andrews for any pain attributable to the hemorrhoidectomy. We presume that the jury's award was limited according to the court's instruction. *Patton v. Chapmond,* 464 S.W.2d 467 (Tex.Civ.App.—Fort Worth 1971, writ ref'd

n. r. e.). Pain and suffering are compensable items of damages in a personal injury action. The jury is entitled to use its good sense and common knowledge to arrive at a figure which fairly compensates the plaintiff for his injuries. *Hernandez v. Baucum*, 344 S.W.2d 498 (Tex.Civ.App.—San Antonio 1961, writ ref'd n. r. e.); *Texas Utilities Co. v. Dear*, 64 S.W.2d 807 (Tex.Civ.App.—Amarillo 1933, writ dism'd). Various notations on the nurses' records indicate that Mr. Andrews was in extreme pain. Furthermore, he received various intramuscular injections and medications for severe pain and nausea. The evidence further indicates that the treatments and medications administered did not serve to relieve the extreme pain from which he was obviously suffering. We have concluded that the evidence supports the jury's award of $2,000.00. Points 10 and 11 are overruled.

In Doctor Lee's twelfth point of error, he has complained that the trial court erred in permitting the plaintiffs to amend their petition within seven days of trial. Such an amendment is permitted under Tex.R.Civ.P. 63. Further, the record does not reflect that the appellant supplemented his objections to the amendment by a motion for continuance. See 2 R. McDonald, Texas Civil Practice, § 8.06 at 236. The trial court's decision to allow amendment of pleadings cannot be overturned except upon showing of an abuse of discretion. *Missouri—Kansas—Texas Railroad Co. v. Gage*, 438 S.W.2d 879 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n. r. e.). The appellant has not demonstrated that he was harmed by the trial court's ruling, and we find no showing of an abuse of discretion on the part of the trial court. Point 12 is overruled.

In points 13–16 Doctor Lee has argued that the respective awards of damages are too much, or alternatively a remittitur should be ordered. He has contended, among other matters, that if the lump sum damage award ($475,000) were invested and earned interest at 6% per year, the yearly interest would be greater than Andrews' yearly income before he died (approximately $20,000).

In a wrongful death action, however, compensation is proper for intangible as well as tangible elements of damage. These include services, advice, counsel, nurture and care in addition to the financial contributions the plaintiff could expect from the victim. *Austin v. Selter*, 415 S.W.2d 489 (Tex.Civ.App.—Austin 1967, writ ref'd n. r. e.). In the light of the instructions given to the jury, we do not agree that a prospective return from "investment" of the award should be regarded as controlling with respect to the propriety of the award made. The amount of the award should be determined on a case-by-case basis and the jury should be given considerable latitude and discretion in fixing the amount of damages. *Camco, Incorporated v. Evans*, 377 S.W.2d 703 (Tex.Civ.App.—San Antonio 1963, writ ref'd n. r. e.). Moreover, a remittitur should not be suggested unless (1) the verdict is shown to be the product of passion, prejudice or other improper motive; (2) the amount fixed was not the result of a deliberate and conscientious conviction in the minds of the jury; or (3) it shocks the conscience of the court. *J. C. Penney Company v. Duran*, 479 S.W.2d 374 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.). *See also, Structural Metals, Inc. v. Impson*, 489 S.W.2d 740 (Tex.Civ.App.—Corpus Christi 1972, no writ); *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710 (1943); *Texas Consolidated Transportation Co. v. Eubanks*, 340 S.W.2d 830 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.).

In this case, all of the evidence showed Andrews to be a hardworking, vigorous and resourceful man. With his wife and children he was generous with his time and money. He assisted his father financially and in business matters. It was indicated that his income would have increased as time passed. Although the jury may have been liberal when it calculated the plaintiffs' damages, we find nothing to indicate that the award was the product of an improper motive. We do not feel that the

verdict is so large as to require the ordering of a remittitur. Points 13–16 are overruled.

■ In his seventeenth point of error, Doctor Lee has complained of the trial court's action in accepting a ten to two jury verdict in this case. He has argued that Tex.R.Civ.P. 292—allowing such verdicts—is an unconstitutional judicial invasion of the legislative function. We believe the correct rule is found in *Sherrill v. Estate of Plumley,* 514 S.W.2d 286 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.). There, rule 292 withstood a similar constitutional attack. Following that authority, we overrule point 17.

From a consideration of the entire record and the various contentions of the appellant, we find no reversible error. Accordingly, the judgment of the trial court is affirmed.