# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00216-CV

**Gloria Mendoza, Individually and on Behalf of the Estate of Her Husband, Leopoldo Mendoza; Claudia Mendoza; Josefa Mendoza; Gloria Mendoza; Oscar Mendoza; and Jesus Mendoza, Appellants**

**v.**

**Daughters of Charity Health Services of Austin d/b/a Seton Home Care and Carmen Lozano, R.N., Appellees**

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT NO. 22,716, HONORABLE JOE B. DIBRELL, JR., JUDGE PRESIDING

The Mendozas appeal a take-nothing jury verdict in their medical malpractice suit against Seton Home Care and Carmen Lozano ("appellees"). In six issues, they challenge the factual sufficiency of the evidence to support the jury's failure to find appellees negligent and various trial court rulings pertaining to the admission of evidence. We overrule the Mendozas' issues and sustain the trial court's judgment in favor of appellees.

## BACKGROUND

In 1997, Leopoldo Mendoza ("Mendoza") began experiencing rectal bleeding and fainting spells. Concerned with his condition, the Mendozas called their neighbor, Sulema Vasquez, a retired nurse, to check on him. Upon her recommendation, Mendoza was taken to the hospital.

After he was diagnosed with a bleeding, ulcerated duodenum mass, he underwent a surgical procedure known as the "Whipple" procedure. The procedure has a thirty percent mortality rate within the first thirty days, making it riskier than most other procedures performed by general surgeons.

After surgery, Mendoza remained in the hospital for ten days. Prior to discharge, he was assigned a home care nurse and a social worker from Seton Home Care. Seton assigned Carmen Lozano ("Lozano") as the home health care nurse. One of her functions was to assess Mendoza's medical condition during his recovery. On October 24th and 27th, Lozano visited Mendoza at his home. On the October 27th visit, the social worker, Barbara Anderson, was also at the Mendozas' home. Her role was to assess social and emotional factors that might have bearing on Mendoza's recovery. One of her functions was to facilitate the Mendozas' use of community resources. In that capacity, she was to arrange transportation to follow-up medical appointments for the Mendozas because they lacked their own transportation. Mendoza died from a pulmonary embolism on October 28th.

The Mendozas filed suit against Seton Home Care and Lozano alleging negligence in their care and treatment of Mendoza. After a six-day trial, the jury returned a unanimous verdict in favor of appellees.

## DISCUSSION

*Factual Sufficiency*

The Mendozas first challenge the factual sufficiency of the evidence. In reviewing factual sufficiency, we examine all the evidence, *In re King's Estate*, 244 S.W.2d 660, 664-65 (Tex.

2

1951), and set aside the verdict only if it is found to be so against the great weight and preponderance of the evidence that it is clearly wrong and unjust, *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Because the jury is the sole judge of the witnesses' credibility, we may not substitute our judgment for their judgment and if there is conflict in evidence, it is for the jury to resolve. *See Benoit v. Wilson*, 239 S.W.2d 792, 797 (Tex. 1951).

Although a jury cannot refuse to find a fact where overwhelming evidence of that fact exists, a jury's failure to find a given fact need not be supported by affirmative evidence. *Gensco, Inc. v. Canco Equip., Inc.*, 737 S.W.2d 345, 347-48 (Tex. App.—Amarillo 1987, no writ). We review a "failure to find" under the same standard as we review jury findings. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 647 (Tex. 1988) (citing Tex. Const. art. V, § 6).

The primary issue is whether Lozano was negligent in failing to recognize and report Mendoza's condition as presenting symptoms of a pulmonary embolism and, if so, whether such negligence proximately caused his death. In a medical malpractice case, the plaintiff bears the burden of proving by direct or circumstantial evidence that (i) there was a breach in the standard of care and (ii) such breach proximately caused the plaintiff's injuries. *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995); *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988). Proximate cause is proven by showing (i) foreseeability, *i.e.*, that the risk resulting from the defendant's negligence was known or could have been anticipated by the defendant, and (ii) cause in fact, *i.e.*, that the negligence attributable to the defendant was a substantial factor in bringing about the ultimate harm and without which no injury would have occurred. *See Milo*, 909 S.W.2d at 511; *see also Bradley v. Rogers*, 879 S.W.2d 947, 953 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

3

The Mendozas offered the testimony of Patty DeSousa, a nurse, as an expert to establish breach of the appropriate standard of care, and Dr. Stephen Cohen, a medical doctor, as an expert to establish causation. The Mendozas urge that Patty DeSousa's testimony established the appropriate standard of care for nurses and that Lozano breached that standard.[1] As to causation, the Mendozas further contend that the evidence presented by Dr. Cohen undisputedly established that Lozano's breach of the standard of care proximately caused Mendoza's death.

Patty DeSousa testified that Lozano breached the standard of care by failing to comply with various provisions of the Nursing Practice Act. Specifically, she testified that Lozano's failure to intervene and stabilize Mendoza's condition and to obtain immediate medical treatment for his pulmonary embolism breached the standard of care. Whether medical treatment was apparently necessary, however, was disputed by both the Mendozas' and appellees' medical experts. Dr. Cohen testified on the Mendozas' behalf and Dr. Clyde Smith testified for appellees. Both Dr. Cohen and Dr. Smith testified that Mendoza presented only two or three of the almost forty symptoms indicating a pulmonary embolism. Additionally, both experts testified that *doctors* miss the diagnosis of a pulmonary embolism seventy percent of the time. However, the two expert doctors differed in opinion as to whether Mendoza actually presented any of the *obvious* symptoms of a pulmonary embolism.

---

[1] Patty DeSousa's testimony was that the Texas Nursing Practice Act establishes the minimum standard of care for nurses. *See* Tex. Occ. Code Ann. §§ 301.451-.469 (West Supp. 2001). Appellees argue that the Nursing Practice Act, along with the policies and procedures of Seton Home Care, provided only guidance in determining the appropriate standard of care. Because neither party challenges the jury charge on the issue, we assume without deciding that the jury charge correctly set forth the appropriate standard of care.

4

Describing Mendoza's condition on October 27th, Dr. Cohen observed that "[i]ndividually he doesn't have phenomenal findings. . . . But most important to me in this patient's care is the fact that he wanted to go to the hospital, that he probably had impending doom . . . ." Whether Mendoza experienced "impending doom" and requested to go to the hospital was disputed at trial. Mrs. Mendoza testified that she begged Lozano to take her husband to the hospital on October 27th and that Lozano refused. Lozano denied that such a request was made. The social worker testified that she was never asked to make arrangements on October 27th, nor did she hear the Mendozas, or anyone else, ask Lozano to do so. Even if such a request was made, Dr. Smith testified that he, unlike Dr. Cohen, would probably not have performed a complete pulmonary embolism work-up given Mendoza's symptoms.

Regarding Mendoza's symptoms, the Mendozas next assert that nurse DeSousa's testimony established that Lozano failed to accurately and completely report Mendoza's vital signs and changes in condition to the treating physician. But on cross-examination, DeSousa agreed that Lozano recorded Mendoza's temperature, pulse, respiration rate, blood pressure, mental status, lung sounds, and heart sounds, checked for edema, and assessed his gastrointestinal system and his appetite. She further agreed that there was no question that Lozano identified Mendoza's vital signs. She testified, however, that not only was it important to note the vital signs in written form, but it was also necessary to relay them to the treating physician.

On this point, Dr. Cohen testified that, while no single factor was dispositive, all things considered, including the family's anxiety, Lozano's observations were significant. But on another occasion, he testified that Mendoza's symptoms were "less than impressive." In an attempt to clarify

5

this statement, Dr. Cohen explained that he was comparing Mendoza with the "classic patient who you see has sudden onset of shortness of breath, clutches their chest, coughs, spits up blood, has a rapid heart rate, a rapid respiration" and presents the classic symptoms a doctor should never miss. In another instance, Dr. Cohen's deposition testimony was introduced stating that, if confronted with Lozano's actual observations on October 27th, he would not have done a pulmonary embolism work-up, short of knowing more about Mendoza's clinical condition. This testimony was consistent with Dr. Smith's testimony.

The Mendozas also contend that Lozano incorrectly assessed Mendoza's pulmonary embolism symptoms because she stereotyped him as a spoiled Hispanic male. Sulema Vasquez testified that, after assessing Mendoza, Lozano came out of the bedroom and "said that the patient was just spoiled." Lozano did not dispute that she characterized Mendoza as a typical Hispanic male. She denied calling him spoiled, but said that she gave instructions to Mrs. Mendoza not to spoil the patient. Instead of diminishing his care, Lozano claimed that she was trying to encourage Mendoza to do things for himself to facilitate his recovery. The Mendozas' argument here is essentially another way of stating Lozano breached the appropriate standard of care. Again, there is conflicting testimony in the record.

Finally, the Mendozas assert that Seton Home Care was negligent in assigning Lozano as Mendoza's nurse because she was not skilled and knowledgeable with respect to the Whipple procedure and post-surgical care. But they did not allege or prove that Mendoza's surgical wound was not properly treated; the evidence reveals the wound was healing nicely. Appellees respond that

6

for seven years Lozano worked with patients who had undergone heart bypasses and heart transplants and was well qualified to care for patients who had undergone serious surgeries.

Contrary to the Mendozas' assertion that Lozano did not appreciate the seriousness of the Whipple procedure, Lozano testified that she was aware that a pulmonary embolism was a potential complication. As to Seton Home Care, the Mendozas offered no evidence of Seton's negligence in assigning Lozano. However, even if we assume that both Lozano and Seton Home Care were negligent, the Mendozas must still establish that their negligence caused Mendoza's death.

On the issue of causation, Dr. Cohen testified that Lozano's failure to recognize the symptoms of a pulmonary embolism and her failure to have Mendoza hospitalized on October 27th caused his death. He further stated that "there was a ninety percent likelihood that [Mendoza] would have survived the pulmonary embolism on the 27th had he [been hospitalized]." However, whether the failure to hospitalize Mendoza was the result of any negligence by Lozano is a separate issue.

Testimony at trial conflicted regarding whether Lozano should have recognized that Mendoza had a pulmonary embolism. Dr. Cohen described the symptoms and signs of a pulmonary embolism and explained that "[t]he diagnosis of pulmonary embolism is not a simple diagnosis." Despite the admitted difficulty in diagnosing a pulmonary embolism, Dr. Cohen stated that "because of various symptoms and everything that was going on with this patient, particularly with the patient's distress, as I understand it, of wanting to go to the hospital," a prudent *physician* would have hospitalized Mendoza.

Dr. Cohen agreed on cross-examination that doctors fail to diagnose pulmonary embolisms seventy percent of the time. He also acknowledged that Mendoza had only one of the most common symptoms, shortness of breath. The same conclusion was reached by Dr. Smith.

The jury heard a range of testimony concerning whether Mendoza presented symptoms of a pulmonary embolism. Dr. Cohen testified that had he been presented with Mendoza's symptoms, he would have alerted to the possibility of a pulmonary embolism. Dr. Smith, on the other hand, testified that he would not have. When the evidence conflicts, the jury can choose to believe one witness and disbelieve another. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). Instead of completely discounting testimony, the jury is also permitted to simply resolve any inconsistencies. *Id.* Therefore, it is appropriately within the province of the jury to weigh expert opinion testimony and to determine which expert witness should be credited. *Pilkington v. Kornell*, 822 S.W.2d 223, 230 (Tex. App.—Dallas 1991, writ denied).

After a careful review of the record, we conclude the jury's verdict was not against the great weight and preponderance of the evidence. Although the Mendozas maintain that the testimony at trial established that Lozano breached the appropriate standard of care by not recognizing the signs of Mendoza's pulmonary embolism and failing to hospitalize him caused his death, we cannot say that the jury's failure to find in the Mendozas' favor was erroneous. Therefore, we overrule the Mendozas' first issue.

***Completeness of Record***

The Mendozas initially complain that the court reporter's trial transcript was incomplete and that certain proceedings were not recorded. Appellees respond that the Mendozas waived any complaints by failing to preserve their objections on the record.

The court reporter is required to make a full record of the proceedings unless excused by agreement of the parties. Tex. R. App. 13.1(a). No such agreement is apparent on the record.

8

Even though the Mendozas requested "that the trial proceedings be recorded, it was nevertheless incumbent on [them] to object if the bench conferences were not held within the hearing of the reporter or recorded by her." *Walthall v. State*, 594 S.W.2d 74, 81 (Tex. Crim. App. 1980). To prevail, the Mendozas must show this Court that the missing portions of the record are necessary for resolving their issues on appeal. *See* Tex. R. App. P. 34.6(f). Here, the Mendozas do not contend that the court reporter failed to record or transcribe any portion of the actual testimony and evidence presented to the jury, or that there is error in the portions of the record that were recorded and transcribed. *See State Farm Fire & Cas. Ins. Co. v. Vandiver*, 941 S.W.2d 343, 350 (Tex. App.—Waco 1997, no writ).

In an affidavit accompanying Mendozas' motion for a new trial, the court reporter testified that she notified the judge and the attorneys that she could not hear all the bench conferences and that she was not recording the objections or arguments of counsel or the court's rulings made at the bench. To preserve error on a claim that the court reporter failed to record certain proceedings, a party must both object to the error and obtain a ruling from the trial judge. Tex. R. App. P. 33.1; *Walthall*, 594 S.W.2d at 81. The Mendozas do not allege that they ever objected at any stage of the trial to the court reporter's failure to record the conferences; therefore, they cannot now complain that the record is incomplete.

### Expert Report

By their second issue, the Mendozas contend that appellees' counsel wrongfully referred to Dr. Cohen's 4590i expert report during the trial and that such use probably resulted in an improper rendition of judgment. Article 4590i of the Medical Liability and Insurance Improvement

Act expressly prohibits the use of any expert report filed in compliance with section 13.01 of that Act. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(k) (West. Supp. 2001). The prohibition on using these preliminary expert reports is clear and unambiguous: "Notwithstanding any other law, an expert report filed under this section . . . shall not be referred to by a defendant during the course of the action for any purpose." *Id.* In specifying that the report shall not be referred to "for any purpose," the statute provides no exceptions. Therefore, the trial court committed error in permitting appellees to cross-examine Dr. Cohen using his 4590i expert report. *See Garcia v. Willman*, 4 S.W.3d 307, 310 (Tex. App.—Corpus Christi 1999, no pet.).

In addition to establishing error, however, the Mendozas must also show that appellees' use of the report led to the rendition of an improper judgment. They claim that appellees used the report to convince the jury that Lozano did not breach the appropriate standard of care. Although they acknowledge using the report themselves, the Mendozas argue that they did so only as a means of mitigating appellees' use of the report. Appellees respond by arguing that Dr. Cohen's testimony concerning his 4590i report was merely cumulative of Lozano's testimony about what she allegedly observed on October 27th.

Because it was duplicative of other testimony in the record, any error in its admission was harmless. Further, in failing to object on the record to appellees' use of the report, the Mendozas did not preserve the issue for appeal. Accordingly, their second issue is overruled.

***Admission of Evidence***

By their sixth issue, the Mendozas contend the trial court erred in admitting evidence regarding the Mendozas' contributory negligence. Trial by consent occurs where evidence of an issue

10

not present in either parties' live pleadings is fully developed at trial under circumstances indicating that the issue was being decided. *See Missouri-Kansas-Texas R.R. Co. v. Alvarez*, 703 S.W.2d 367, 377-78 (Tex. App.—Austin 1986, writ ref'd n.r.e.). By failing to object, the Mendozas failed to preserve this argument for appeal. Issue six is overruled.

In issues three and four, the Mendozas contend the trial court erred by not allowing Patty DeSousa to testify regarding causation and by admitting portions of Sulema Vasquez's video deposition testimony. Whether to admit or exclude evidence is within the sound discretion of a trial court. *Codner v. Arellano*, 40 S.W.3d 666, 674 (Tex. App.—Austin 2001, no pet.) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)). To obtain reversal of a judgment based on an improper evidentiary ruling, an appellant must demonstrate that the error probably resulted in an improper judgment. *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992); *Arlington Indep. Sch. Dist. v. Texas Attorney Gen.*, 37 S.W.3d 152, 161 (Tex. App.—Austin 2001, no pet.). The appellant must show that "the judgment turns on the particular evidence excluded or admitted." *Arlington Indep. Sch. Dist.*, 37 S.W.3d at 161 (quoting *Alvarado*, 897 S.W.2d at 753-54); *see also Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex. 1989). We review the entire record to determine whether a party has met this burden. *Arlington Indep. Sch. Dist.*, 37 S.W.3d at 161. So long as any legitimate basis exists, a trial court's evidentiary rulings will be affirmed. *Id.* (citing *Malone*, 972 S.W.2d at 43; *State Bar v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989)).

By their third issue, the Mendozas contend that the trial court failed to allow Patty DeSousa to testify as to causation and erred in instructing the jury to disregard her testimony on that issue. An error in the exclusion of expert testimony requires reversal only if the proposed testimony

11

is both controlling on a material issue and not cumulative. *William Distr. Co. v. Franklin*, 898 S.W.2d 816, 817 (Tex. 1995); *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994). Here, the excluded testimony concerns the cause of death. If permitted, Patty DeSousa would have testified that because Lozano did not get Mendoza to the hospital, he died. This testimony would have been cumulative of Dr. Cohen's causation testimony. Therefore, we cannot say the trial court erred in excluding this testimony. Accordingly, the Mendozas' third issue is overruled.

By their fourth issue, the Mendozas contend that it was error to admit portions of the video testimony of Sulema Vasquez because she was not designated as a medical expert and was not qualified to give medical opinions in this case. It is well recognized that an appealing party cannot complain about "the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of similar character." *Southwestern Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 473 (Tex. 1998) (quoting *McInnes v. Yamaha Motor Co.*, 673 S.W.2d 185, 188 (Tex. 1984)).

The Mendozas offered Sulema Vasquez's deposition testimony, both in oral and video form. On direct examination, the Mendozas referred to the following portions of Sulema Vasquez's testimony regarding Lozano's evaluation of Mendoza's condition on October 27th:

Q [Mendozas]: All right. Did she quote the vital signs to you?

A [Vasquez]: No. No. She just told me that everything was all right and that he was fine. All that he needed to do was get out of bed and start eating and increase his activity and that he was spoiled.

Q: All right. Well, as the nurse, what did that mean to you when she said that?

A:              I wasn't impressed.

                                    * * * * *

Q [Mendozas]:   How would you compare his color on Monday to what you saw the
                preceding Friday?

A [Vasquez]:    Worse.

Q:              And how would you characterize his short—was he short of breath
                when you saw him on Monday?

A:              Yes, sir.

Q:              And how would you characterize it?

A:              More pronounced.

Q:              Did you think there had been a significant and serious change in his
                condition between the time you saw him on Friday and the time you
                saw him on Monday?

A:              Yes, sir.

On appeal, the Mendozas now complain that appellees introduced the following testimony from

Sulema Vasquez:

Q [Appellees]:  Is there anything that you know of that would indicate that her
                evaluation was not absolutely correct at the time she did it?

A [Vasquez]:    I'm sure that she felt that she had done the very best that she could.

Q:              On Monday—

A:              Yes, sir.

Q:              —the day before Mr. Mendoza died—

A:              Yes, sir.

13

Q:     —based upon your nurse training and what you saw there did you feel like he was in a life threatening situation?

A:     Not at that moment, no.

* * * * *

Q [Appellees]:     But let's say you felt like, as a nurse and a friend, that this person needed to be in the hospital or needed to see a doctor now, what would you do? If you were my friend, what would you do? I don't care what anyone else said. I'm saying if you believed that I needed to see a doctor now or needed to be in the hospital, what would you do?

A [Vasquez]:     The patient was in no immediate need to call it as an emergency.

Q:     Patient, as far as you were concerned on Monday, was in no immediate need of seeing a doctor immediately.

A:     What I'm trying to tell you is that the patient was in no emergency. He was sick, but in no emergency to go to the emergency room or to the hospital.

Q:     At the time you saw him on Monday?

A:     Yes, right.

Specifically, the Mendozas argue that "the trial court abused its discretion and allowed expert testimony from this witness regarding Mendoza's condition, his need for emergency care, and the adequacy of Lozano's evaluation of Leopoldo Mendoza." Because the Mendozas offered Sulema Vasquez's testimony for the same or similar purpose—namely her opinion based on her prior nursing experience—they cannot now complain on appeal that it was error to permit appellees the same opportunity. Further, it is not evident that Sulema Vasquez testified in an expert medical capacity. Her testimony was based on personal observations and experience and is, in any

14

event, admissible. *See* Tex. R. Evid. 701; *see also Lee v. Andrews*, 545 S.W.2d 238, 245 (Tex. Civ. App.—Amarillo 1976, writ dism'd) (stating there is no requirement "that a witness be [an] expert in medical matters to give an opinion as to observed physical condition") (citing 2 C. McCormick & R. Ray, *Texas Law of Evidence*, § 1427 at 271-73). Even assuming Sulema Vasquez could appropriately be deemed an expert, the Mendozas' failure to object to her testimony on the record does not preserve the issue on appeal. *See* Tex. R. App. P. 33.1. Therefore, the Mendozas' fourth issue is overruled.

In their fifth issue, the Mendozas contend that it was error to allow the testimony of Dr. Smith without conducting a preliminary hearing to determine his qualifications and the reliability of his opinions. The Mendozas assert that, pursuant to their motion in limine, the parties approached the bench when Dr. Smith was called to testify and the Mendozas challenged Dr. Smith's testimony, requesting a *Robinson* gatekeeper hearing, which was denied. *See generally E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995).

To preserve error on this issue, the Mendozas were required to object to the evidence before trial or when it was offered at trial. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998). This requirement prevents trial or appeal by ambush and permits the offering party an opportunity to cure any existing defect. *Id.* A motion in limine by itself is insufficient to preserve error. *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex. 1963). As previously discussed, the Mendozas bear the burden of presenting this Court with a complete record. Because the record is void of any objections or rulings regarding Dr. Smith's testimony, this issue was not preserved on appeal. Accordingly, issue five is overruled.

15

## CONCLUSION

Having overruled the Mendozas' issues, we affirm the trial court's judgment in favor of appellees.

_____

—

Jan P. Patterson, Justice

Before Justices Kidd, B. A. Smith and Patterson

Affirmed

Filed:   October 25, 2001

Do Not Publish

16